**In the Interest of T.P., a Minor.**

**Appeal of Commonwealth of Pennsylvania, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 2012.
Filed Oct. 21, 2013.

Christopher M. Jason, Assistant District Attorney, Harrisburg, for Commonwealth, appellant.

Andrea L. Haynes, Public Defender, Harrisburg, for appellee.

BEFORE: BOWES, OLSON, and WECHT, JJ.

OPINION BY BOWES, J.:

The Commonwealth appeals from the juvenile court order that granted T.P.'s motion to suppress based on 42 Pa.C.S. § 6338(c)(1), a provision of the Juvenile Act. Specifically, the court ruled that certain statements made by Juvenile during a pre-polygraph interview that was part of court-ordered counseling he was receiving for unrelated delinquency cases were inadmissible. After careful review, we affirm.[1]

Juvenile was originally adjudicated delinquent on two separate juvenile delinquency petitions. The juvenile court found Juvenile delinquent for the commission of acts constituting indecent assault and harassment based on his fondling of a twelve-year-old female's breasts while another juvenile engaged in forcible intercourse with the victim. In addition, the court determined that Juvenile committed the delinquent act of indecent exposure after he both showed a student his penis during gym class and touched that student's back with his penis. At the time of the commission of the delinquent acts, Juvenile was not yet fourteen.

The juvenile court entered a dispositional order for both cases requiring Juvenile to complete sex-offender counseling with the Commonwealth Clinical Group ("Clinical Group"). As part of Juvenile's treatment, the Clinical Group mandated that he take a polygraph exam. During a pre-polygraph interview, which immediately preceded the polygraph exam, Juvenile admitted to sexual misconduct involving a family member. Ultimately, it was determined that Juvenile engaged in forcible intercourse with his nine-year-old brother. Based on Juvenile's statements during the interview, the Commonwealth filed the underlying delinquency petition alleging two delinquent acts of involuntary deviate sexual intercourse ("IDSI") by forcible compulsion, two charges of IDSI with a minor less than thirteen years old, one act of criminal attempt to commit IDSI, and four counts of indecent assault.

Juvenile filed a motion seeking to suppress the admission of any statements that he made during the interview. Therein, he argued that his statements were taken in violation of his constitutional rights against self-incrimination since he was not provided *Miranda* warnings, his statements were not knowing, voluntary, and intelligently made, and the statements were inadmissible under the Juvenile Act because admission of his confession would contravene the goals of that statute. The juvenile court conducted a suppression hearing on March 7, 2012. Juvenile explicitly argued at the suppression hearing, that, "the incriminating statements that he might have made should be suppressed under the Juvenile Act because it's under

---

1. This matter was reassigned to this author.

the process of receiving treatment." Suppression Hearing, 3/7/12, at 6. He did not cite directly to § 6338(c)(1). Subsequently, on March 28, 2012, both Juvenile and the Commonwealth submitted respective memorandum on the suppression issues. Again, Juvenile failed to expressly cite § 6338(c)(1). The juvenile court concluded that Juvenile's *Miranda* position did not entitle him to relief, but suppressed his statements based on § 6338(c)(1), the section of the Juvenile Act governing admissions obtained during the course of a screening or assessment pursuant to proceedings under the Juvenile Act.

The Commonwealth timely appealed, certifying that the juvenile court order suppressing Juvenile's statements would terminate or substantially handicap its delinquency proceedings. *See* Pa.R.A.P. 311(d). The juvenile court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth complied, and the juvenile court authored its Pa. R.A.P. 1925(a) memorandum. The matter is now ready for this Court's consideration. The Commonwealth raises two issues for our review.

1. Did the Juvenile waive any claim to suppress his confessions under 42 Pa.C.S.A. § 6338 by failing to raise the issue at any point during the proceedings, including [his] pretrial motion, pretrial suppression hearing, and extensive written submissions after the pretrial hearing?

2. Did the [juvenile] court err in concluding that an exit therapeutic maintenance polygraph conducted as part of sex offender counseling constituted [an] "assessment" rather than "treatment" under 42 Pa.C.S.A. § 6338(c)?

Commonwealth's brief at 4.

 When reviewing the propriety of a suppression order, we are required to determine whether "the record supports the factual findings of the suppression court," and "we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Peterson,* 17 A.3d 935, 937 (Pa.Super.2011). Since Juvenile prevailed below, we consider only the evidence of Juvenile and so much of the Commonwealth's evidence that is un-contradicted when read in the context of the entire record. *Id.* Concomitantly, where the questions presented concern legal questions, we are not bound by the suppression court's determinations and our standard of review is *de novo. See Commonwealth v. Durso,* 2013 PA Super 223, —— A.3d ——, ——, 2013 WL 3963714, *1 (discussing suppression issue concerning statutory interpretation).

The Commonwealth begins by arguing that Pa.R.A.P. 302 applies, and that Juvenile's issue is waived because it was not raised below. According to the Commonwealth, who is the Appellant herein, Juvenile's failure to specifically assert the applicability of § 6338 during the hearing resulted in the claim being waived. In support of this position, the Commonwealth relies on case law discussing the failure of an **appellant** to set forth an argument in the trial court and the appellant's forwarding of that position on appeal. Commonwealth's brief at 13–14 (citing *Commonwealth v. Charleston,* 16 A.3d 505 (Pa.Super.2011); *Commonwealth v. Shamsud–Din,* 995 A.2d 1224 (Pa.Super.2010)).

The Commonwealth continues that Juvenile "failed to raise the claim that his confessions would be inadmissible in an adjudicatory hearing under 42 Pa.C.S.A. § 6338 at any stage in these proceedings, despite having multiple opportunities to do so." Commonwealth's brief at 14. It maintains that because Juvenile did not

cite § 6338 in his five page suppression motion, Juvenile waived any reliance upon § 6338(c)(1). The Commonwealth also asserts that Juvenile's claim that his confession should be suppressed based on the juvenile court's "plenary authority under the Juvenile Act" did not adequately raise the grounds on which the juvenile court afforded suppression. Commonwealth's brief at 14.

The Commonwealth highlights that juvenile counsel did not explicitly cite § 6338 during the suppression hearing or reference the provision in post-hearing memorandum. Instead, in addition to his *Miranda* positions, Juvenile presented approximately two pages of argument pertaining to the juvenile court's plenary authority to suppress Juvenile's admissions under the Juvenile Act. Lastly, the Commonwealth relies on case law discussing appellate waiver based on a party's inadequate development of a legal issue on appeal. In this respect, the Commonwealth asserts that Juvenile's plenary authority argument was so vague that it "abrogates the very concept of specificity fostered in Pa.R.A.P. 302(a)." Commonwealth's brief at 17.

Juvenile counters that the Commonwealth's argument "demonstrates a lack of understanding of appellate practice and the law regarding preservations of issues." Juvenile's brief at 6. In leveling this aspect of his argument, Juvenile points out that Pa.R.A.P. 302(a) applies to appellants and not appellees. Juvenile contends that the Commonwealth's application of the rule is "nonsensical" because it is the Commonwealth which filed the instant appeal. *Id.* Additionally, Juvenile maintains that the case law discussing specific and timely objections is equally inapplicable because those cases were discussing an appellant's failure to preserve an argument and not an appellee's default. Juvenile submits that the suppression court correctly considered

the relevant portions of the Juvenile Act after he argued that the court had general authority under that Act to suppress his statements. In sum, Juvenile reasons that the suppression court "appropriately applied the law to the facts of the case and determined that Juvenile's statements should be suppressed pursuant to 42 Pa. C.S.A. § 6338(c)(1)." Juvenile's brief at 9.

We agree. The question in this matter is not whether Juvenile, who is the appellee, is raising an issue for the first time on appeal. Rather, the issue is whether the juvenile court erred by *sua sponte* affording relief on the basis of a specific statutory provision of the Juvenile Act not expressly referenced by Juvenile. These questions are distinct. Thus, the Commonwealth's reliance on Pa.R.A.P. 302(a) and cases involving questions presented for the first time on appeal or inadequate briefing are inapt.

██ Moreover, it is a well-settled doctrine in this Commonwealth that a trial court can be affirmed on any valid basis appearing of record. *Commonwealth v. Moore*, 594 Pa. 619, 937 A.2d 1062, 1073 (2007); *Commonwealth v. Parker*, 591 Pa. 526, 919 A.2d 943, 948 (2007); *Commonwealth v. Hernandez*, 594 Pa. 319, 935 A.2d 1275, 1290 n. 3 (2007) (Castille, J., concurring); *Thomas v. Mann*, 28 Pa. 520, 522 (Pa.1857). "The precept may be applied even though the reason for sustaining the judgment was not raised in the trial court, relied on by that court in reaching its decision, or brought to the attention of the appellate courts." Thomas G. Saylor, *Right for Any Reason: An Unsettled Doctrine at the Supreme Court Level and an Anecdotal Experience with Former Chief Justice Cappy*, 47 Duq.L.Rev. 489, 490 (2009). Therefore, so long as the juvenile court's ultimate decision is supported by the record, it can be affirmed.

■ Furthermore, while constitutional and statutory-based claims can be waived, courts are not required to view only the specific rules, statutes, or cases cited by a party. If an assertion raised by a party can fairly be said to implicate a rule of law or legal precedent known by a court to be applicable, it is not foreclosed from considering that legal precept solely because that precise case, rule, or statute was not cited. *See Hernandez, supra* at 1290 n. 3 (Castille, J., concurring) ("The fact that the Commonwealth fails to argue the [*Commonwealth v.*] *Baker* [, 518 Pa. 145, 541 A.2d 1381 (1988) ] line does not preclude us from realizing the propriety of the police conduct under another settled line of authority. The suppression court denied relief and we must affirm that determination if it is correct for any reason, even if the reason differs from that accepted by the court below."). To hold otherwise would severely restrict a court's decision-making abilities.

■ We add that waiver is "a judicial construct, made via procedural rules and practices, to carry out the orderly functioning of the appellate process." *Commonwealth v. Foster*, 609 Pa. 502, 17 A.3d 332, 353 (2011) (Castille, J., concurring). The primary reasons for our issue preservation doctrines, *i.e.*, the reasons relied on by the Commonwealth, are premised on issues that are not present in this case. In the seminal case of *Dilliplaine v. Lehigh Valley Trust, Co.*, 457 Pa. 255, 322 A.2d 114 (1974), our Supreme Court indicated that the plain error doctrine would no longer be applicable, requiring parties to raise issues in the trial court. *Dilliplaine* has been said to be the foundation for the waiver doctrine as it pertains to raising claims before a trial court. *See Commonwealth v. Johnson*, 310 Pa.Super. 385, 456 A.2d 988, 994 (1983). The *Dilliplaine* Court stated,

Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.

*Dilliplaine, supra* at 116–117 (footnote omitted).

■ Here, we are not being called upon to review a point that has not been discussed by the juvenile court. There is no absence of a juvenile court Pa.R.A.P. 1925(b) opinion on the issue. In its 1925(b) opinion, the juvenile court indicated that it did not believe it committed any error, and any expense or delay added in this case would actually be caused by this Court's decision not to address the merits of the underlying question. We are not being asked to act as a fact-finder or consider matters outside the record or make a credibility determination on appeal. Both parties have more than adequately briefed and addressed the merits of the underlying issue before this Court. We would not be addressing or asserting that the court below committed an error on an issue it was never afforded an opportunity to ex-

amine. In addition, while waiver doctrines also serve important purposes in cases where a deferential standard of review is implicated, since in many instances we are being called upon to decide questions involving a trial court's discretion, the inquiry involved in this case does not require deferential review. In sum, the purposes of our issue preservation rules have been met.

Moreover, as discussed, this case does not actually involve appellate waiver concerns. Here, the court applied an applicable statute to the facts of the case. *See Rauch v. Commonwealth*, 78 Pa. 490 (1875) (in criminal prosecution for selling alcohol, the Pennsylvania Supreme Court noted, "It is contended, however, that the Act of 1872 not being pleaded or replied the court ought not to have noticed it. But the court having noticed it, the real question is whether it committed error in so doing? The court having acted under the law, clearly it acted according to law, and it cannot be error when a court acts according to law. But I have no doubt the court was right in taking notice of it.").

More importantly, Juvenile's specific issue, though somewhat inartfully forwarded, adequately alerted the juvenile court and Commonwealth that he was seeking suppression based on the Juvenile Act and its prohibitions against using certain self-incriminatory statements. As Juvenile's claims leveled below fairly implicated § 6338, we decline to find that the juvenile

court erred in considering and applying § 6338(c)(1).

Broadly, the entirety of § 6338 of the Juvenile Act codifies by statute the right to confront witnesses, present evidence, the right to remain silent and the right against self-incrimination engrafted in the federal constitution's Fifth and Sixth Amendments and Article I, § 9 of the Pennsylvania Constitution. Simply put, § 6338 clarifies that some of the constitutional protections afforded adult criminals apply to juvenile proceedings even though such proceedings are not considered criminal.[2] *See In re R.A., supra.*

Section 6338(c)(1) reads:

No statements, admissions or confessions made by or incriminating information obtained from a child in the course of a screening or assessment that is undertaken in conjunction with any proceedings under this chapter, including, but not limited to, that which is court ordered, shall be admitted into evidence against the child on the issue of whether the child committed a delinquent act under this chapter or on the issue of guilt in any criminal proceeding.

42 Pa.C.S. § 6338(c)(1). By alleging that his *Miranda* rights were abridged and asserting that the Court had authority under the Juvenile Act to suppress his statements to further the goals of the Act, Juvenile adequately alerted the juvenile court to the issue in question, and that the entirety of § 6338 was implicated.[3]

**2.** Similarly, 42 Pa.C.S. § 6337 recognizes a right to counsel in juvenile proceedings.

**3.** Section 6338(b) states:

(b) **Self-incrimination.**—A child charged with a delinquent act need not be a witness against or otherwise incriminate himself. An extrajudicial statement, if obtained in the course of violation of this chapter or which could be constitutionally inadmissible in a criminal proceeding, shall not be used against him. Evidence illegally seized

or obtained shall not be received over objection to establish the allegations made against him. A confession validly made by a child out of court at a time when the child is under 18 years of age shall be insufficient to support an adjudication of delinquency unless it is corroborated by other evidence. 42 Pa.C.S. § 6338(b). In setting forth a *Miranda* violation contention, the applicability of § 6338(b) was fairly presented to the court. Thus, the Commonwealth's assertion that all of § 6338 was not implicated is overly broad.

We do not read Juvenile's issue below in isolation. Nor do we find it appropriate to ignore the context of the issue in light of the other claims leveled by Juvenile. Rather, Juvenile was referring to prohibitions on admitting statements of self-incrimination under the Juvenile Act. Juvenile argued expressly at the suppression hearing that "the incriminating statements that he might have made should be suppressed under the Juvenile Act because it's under the process of receiving treatment." Suppression Hearing, 3/7/12, at 6.

Neither the Commonwealth nor the juvenile court was required to comb the entire Juvenile Act to discern Juvenile's main concern. Juvenile's claim was not that the juvenile court could find any reason to suppress the statement merely to promote the goals of the Juvenile Act, but that the purpose of the Juvenile Act is to foster rehabilitation and openness, a purpose he argued was not served when self-incriminatory statements can be used in later adjudicatory hearings for purposes of prosecution. Such an argument triggers § 6338, and we do not fault the juvenile court for its knowledge and recognition of the law.

We are aware that the Commonwealth filed a post-argument letter under Pa. R.A.P. 2501(b), asserting that *Commonwealth v. Pena*, 31 A.3d 704 (Pa.Super.2011), is controlling and that the juvenile court impermissibly acted as an advocate on behalf of Juvenile. We note that *Pena* does not fall within the confines of Pa.R.A.P. 2501(b), which permits a party to submit case law that reverses, modifies, overrules, or affects existing precedent relied upon by the party in its initial brief. Nonetheless, neither this Court nor any other court is required to turn a blind eye to governing law or precedent not specifically cited in a brief. Since *Pena* does speak to a trial court's *sua sponte* raising of an issue, we are not precluded from considering that decision. However, we find that *Pena* is not controlling in this matter.

The Commonwealth relies on a statement in *Pena* which set forth that the trial court therein erred "[b]y *sua sponte* partially deciding a motion to preclude the victims from testifying on a ground not raised by defense counsel" because it "deprived the Commonwealth of an opportunity to be heard and inappropriately acted as an advocate for the defense." *Id.* at 708. This aspect of the *Pena* holding must be read in the context of that case.

*Pena* involved a factual scenario and trial court actions dissimilar to those that occurred in the instant case. In *Pena*, the trial court found that a child victim was incompetent to testify based partially on mental health concerns. However, the record was devoid of any objective medical evidence demonstrating that the victim's mental health problems related to competency. Hence, *Pena* stands for the noncontroversial position that a trial court cannot base its decision on an argument not advanced before it where no evidence supports that position.

In contrast, this case involves whether Juvenile's admissions during a court-ordered rehabilitation matter can be admissible evidence in a delinquency proceeding where Juvenile alleged, generally, that the Juvenile Act precluded the statements from being admitted because the Act's goals of treatment and rehabilitation would be frustrated. Thus, the central question here is not dependent on factual evidence that was never introduced. This case presents few of the concerns at issue in *Pena*, an adult proceeding, and the specific matter addressed by the juvenile court involved a legal question that can be resolved based on the record evidence introduced.

Moreover, we disagree that the suppression court acted as an advocate in this case. While juvenile delinquency matters are similar in nature to criminal proceedings, they were not intended to be as adversarial as adult cases. As this Court stated in *In re R.A.*, 761 A.2d 1220 (Pa.Super.2000), "Juvenile proceedings, by design of the General Assembly, have always lacked much of the trappings of adult criminal proceedings ... juvenile proceedings remain intimate, informal and protective in nature." *Id.* at 1223–1224 (quoting *In re J.H.*, 737 A.2d 275, 278 (Pa.Super.1999)); *see also In re K.B.*, 432 Pa.Super. 586, 639 A.2d 798, 801 (1994), *overruled on other grounds by In re M.M.*, 547 Pa. 237, 690 A.2d 175 (1997) (discussing history of juvenile proceedings and opining, "juvenile hearings became non-adversarial, informal proceedings, where the strict rules of evidence and procedure were relaxed and in which the judge could analyze the child's needs and fashion the best possible remedy.").

Pointedly, the only similarity between the two cases is the position that the Commonwealth was deprived of an opportunity to cogently address and respond to the position adopted by the court below.[4] If the primary concern is that the Commonwealth was not permitted to present legal argument on the applicability of § 6338, that concern is no longer applicable. The Commonwealth has now had the opportunity to argue the purely legal issue. With respect to the merits of the Commonwealth's position that the court-ordered interview in which Juvenile made his incriminating statements was "treatment" and not an "assessment," we find its allegation unpersuasive.

When interpreting a statute, we look "to ascertain and effectuate the intention of the General Assembly." *Durso, supra* at

———, 2013 WL 3963714 at *1. Additionally, we must give effect to all of the laws provision and are not to "render language superfluous or assume language to be mere surplusage." *Id.* If "the text of the statute is 'clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' " *Id.*

■ The Commonwealth posits that § 6338(c)(2) distinguishes between the terms "treatment" and "assessment." That section reads, "The provisions of paragraph (1) are in addition to and do not override any existing statutory and constitutional prohibition on the admission into evidence in delinquency and criminal proceedings of information obtained during screening, assessment or treatment." 42 Pa.C.S. § 6338(c)(2). According to the Commonwealth, since § 6338(c)(2) utilizes the word "treatment" after the word "assessment," the two words are not identical. From this premise, the Commonwealth asserts that, "clear legislative intent dictates that the protection against self-incrimination outlined in 42 Pa.C.S.A. § 6338(c)(1) with respect to 'screenings and assessments' do not extend to confessions made during a juvenile's treatment." Commonwealth's brief at 20. The Commonwealth continues that Juvenile conceded that he was receiving treatment and that his polygraph interview was part of rehabilitative treatment. Thus, it submits that § 6338(c)(1) does not apply to Juvenile's statements.

Juvenile responds that a plain reading of § 6338(c)(1), § 6302, defining an "assessment," and § 6338(c)(2), reveal that Juvenile's "pre-test interview for the polygraph constituted an 'assessment[.]' " Juvenile's brief at 11. In advancing this position,

---

4. The Commonwealth certainly could have filed a motion for reconsideration from the juvenile court's order and presented the legal argument it now advances.

Juvenile argues that, "[t]he purpose of the pre-test interview and subsequent polygraph, as stated by the test's own administrators, was an assessment as a part of the Commonwealth Clinical Group's recommendations to be able to support Appellee's statements that he had not continued to engage in sexually offensive behaviors while in treatment with the agency." Juvenile's brief at 16 (emphasis in original) (internal quotations omitted). Succinctly put, Juvenile was being assessed so the Clinical Group could determine if its treatment had been a success.

Juvenile notes that the Clinical Group staff repeatedly used the word "assessment" in discussing the polygraph interview. The clinical director of the sex-offender counseling program specifically stated, "We use a polygraph assessment to really gauge the veracity of what a client is informing us." Suppression Hearing, 3/7/12, at 30.[5]

While we agree with the Commonwealth that the terms "assessment" and "treatment" are distinct, arguing that Juvenile's interview was treatment does not actually answer the question of whether the interview was an assessment, nor does it foreclose that the interview was an assessment. Asserting that Juvenile was involved in treatment does not automatically advance the Commonwealth's position, since treatment is the broader term and the interview could be both an assessment and part of treatment. One cannot be treated without being assessed. The two words are not mutually exclusive and it does not logically follow that, because the terms are distinct, Juvenile's statements were made during treatment but not an assessment. The Commonwealth simply obfuscates the inquiry, *i.e.,* whether the

interview falls within the statutory definition of an assessment.

The term "assessment" is defined by the Juvenile Act. That definition provides that an "assessment" is:

> An individualized examination of a child to determine the child's psychosocial needs and problems, including the type and extent of any mental health, substance abuse or co-occurring mental health and substance abuse disorders and recommendations for treatment. The term includes, but is not limited to, a drug and alcohol, psychological and psychiatric evaluation, records review, clinical interview and the administration of a formal test and instrument.

42 Pa.C.S. § 6302.

The interview in question was part of a court-ordered sex-offender counseling program administered by the Clinical Group. Specifically, it involved the administration of a polygraph test. During the pre-polygraph interview immediately preceding the polygraph exam, Juvenile admitted to sexual misconduct involving a family member. The pre-polygraph interview was both a clinical interview and the administration of a formal test conducted by the Clinical Group. Thus, Juvenile's admission was both part of an assessment and treatment and is prohibited from being introduced as evidence that Juvenile committed such acts in his delinquency proceeding.

The language of the Juvenile Act provisions in question reveals that the Juvenile Act is intended to foster truthfulness and full disclosure by a juvenile in order to further treatment. By prohibiting incriminating statements made during assessments from being used in delinquency and adult prosecutions, this goal is served—a

---

**5.** While the testimony is not dispositive of the legal issue of whether the interview was an assessment, it certainly weighs in favor of that position. Of course, those who testified also

continually remarked that Juvenile was in treatment, but as discussed in the body of this opinion, treatment can encompass an assessment.

juvenile can freely disclose any transgressions without fear of his statements being used in connection with additional juvenile delinquency proceedings. The Commonwealth's position would defeat a critical component of juvenile rehabilitation, foster suspicion and the potential withholding of information by juveniles, violate a duly-enacted statutory provision, and give rise to possible constitutional concerns.

In conclusion, Juvenile adequately alerted the juvenile court of the issue, and it is not error for a juvenile court to take notice and apply a governing statute. Since the juvenile court correctly applied § 6338(c)(1), we affirm.

Order affirmed.

Judge WECHT files a Dissenting Opinion.

## DISSENTING OPINION BY WECHT, J.:

T.P. ("Appellee") filed a motion seeking to suppress statements that he made during a polygraph examination. Appellee was required to undergo that polygraph in order to complete court-ordered sexual offender counseling. The inculpatory statements that ensued formed the basis for the juvenile delinquency petition that is at issue here. Appellee alleged that his statements should be suppressed because: (1) his constitutional rights against self-incrimination were violated when he received no *Miranda*[1] warnings; (2) his statements were not made knowingly, voluntarily, and/or intentionally; (3) the statements constituted fruit of the tainted, non-*Mirandized* interrogation; and (4) the admission of the statements would contravene the goals of the Juvenile Act.[2]

Appellee never specifically alleged that his statements should be suppressed pursuant to 42 Pa.C.S. § 6338(c)(1). The Ma-

jority concedes that Appellee did not cite this provision in any written filing or at the suppression hearing. *See* Maj. Op. at 1168–69. The juvenile court raised this provision on its own, without affording the Commonwealth the opportunity to brief or argue the section's applicability, and then proceeded to order the statements to be suppressed. Unlike the Majority, I do not believe that we should approve the juvenile court's approach. Although there is no reason to doubt the intentions of the juvenile court, that court crossed the line from arbiter to advocate. Accordingly, I respectfully dissent.

The learned Majority has aptly set forth the factual and procedural background of this case. I need not reproduce that information here. I note as well my agreement with the Majority's rejection of the Commonwealth's invocation of Pa.R.A.P. 302 as a basis for waiver. Maj. Op. at 1170–71. The Majority properly concludes that Rule 302 has no applicability in this situation, and that the core inquiry in this case is "whether the juvenile court erred by *sua sponte* affording relief on the basis of a specific statutory provision of the Juvenile Act not expressly referenced by [Appellee]." *Id.* I would hold that the court, in fact, did err.

The juvenile court suppressed Appellee's statements based upon 42 Pa.C.S. § 6338(c)(1). That provision states:

No statements, admissions or confessions made by or incriminating information obtained from a child in the course of a screening or assessment that is undertaken in conjunction with any proceedings under this chapter, including, but not limited to, that which is court ordered, shall be admitted into evidence against the child on the issue of whether

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *See generally* 42 Pa.C.S. §§ 6301, et seq.

the child committed a delinquent act under this chapter or on the issue of guilt in any criminal proceeding.

42 Pa.C.S. § 6338(c)(1).

The Commonwealth observes that Appellee failed to invoke this statutory provision at any available opportunity, whether in Appellee's prehearing suppression motion, at the suppression hearing, or in Appellee's post-hearing brief. Brief for the Commonwealth at 14–15. The Commonwealth notes that Appellee's only claim not implicating *Miranda* was a broader request that the confession should be suppressed pursuant to the juvenile court's "plenary authority under the Juvenile Act to enter orders that are in the best interest of the juvenile." *Id.* at 14. The Commonwealth points out that Appellee was afforded an opportunity to outline his potential grounds for relief at the suppression hearing, where Appellee again failed to raise section 6338(c). Appellee argued only that: (1) the confession was obtained in violation of *Miranda;* (2) the confession was inadmissible under the Juvenile Act because it was made during the course of Appellee's rehabilitative treatment; and (3) the confession should be suppressed based upon a policy argument regarding the necessity of honesty and forthrightness during sex-related counseling and treatment. *Id.* at 15; Notes of Testimony ("N.T."), 3/7/2012, at 6–7.

In a post-argument submission to this Court, the Commonwealth directs our attention to our decision in *Commonwealth v. Pena,* 31 A.3d 704 (Pa.Super.2011).[3] I find *Pena* to be controlling. In *Pena,* the defendant-appellee filed a motion seeking to preclude the victims of his alleged sexual assault from testifying against him at trial. *Pena,* 31 A.3d at 706. The two alleged victims had accused other men of sexual assault. Those accusations ultimately led to convictions of those other two men. *Id.* at 705. We made the following observations:

> [B]oth girls have a history of mental health and behavioral problems. [One victim] was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD") and takes Adderall and Benadryl on a regular basis. [The other victim] was also diagnosed with ADHD and depression. [She] has twice been hospitalized on an inpatient basis. She currently takes Respidol, Zoloft, and Abilify. [She] has had side effects from the Abilify in the form of "flashbacks" to the [previous] sexual abuse....

*Id.* at 706. The appellee's motion sought only a "taint" hearing based upon the age of the victims, the victims' alleged bias against the appellant, and the influence of the victims' mother. *Id.* at 706, 707. Over the Commonwealth's objection, the trial court held the requested hearing. Following the hearing, the trial court not only ruled that the victims were incompetent to testify based upon "taint,"[4] but also that

---

**3.** The official docket in this case shows that the Commonwealth's post-argument letter to this Court was filed pursuant to Pa.R.A.P. 2501(b). This rule of procedure permits the submission of a post-argument letter identifying an authority that reverses, modifies, overrules, or otherwise affects existing precedent relied upon by the party in its brief. *Id.* While the Commonwealth's letter does not address how *Pena* fits within this mold, Appellee has not challenged either the propriety of the submission of this letter or the applicabili-

ty of Rule 2501(b). Therefore, we should consider the Commonwealth's Rule 2501(b) submission. Moreover, I agree with the Majority that we are not required to turn a blind eye to cases not cited by the parties in their briefs. *See* Maj. Op. at 1173.

**4.** The Pennsylvania Supreme Court has defined "taint" as "the implantation of false memories or distortion of actual memories through improper and suggestive interview techniques." *Commonwealth v. Delbridge,* 578 Pa. 641, 855 A.2d 27, 30, 35 (2003).

the victims were incompetent to testify based upon their mental health problems, as described above. However, the appellee had not raised the mental health of the victims as a basis for deeming the victims incompetent to testify.

We reversed the trial court's order. First, we held that, because the victims were fifteen years old at the time of the "taint" hearing, the issue of "taint" was "totally irrelevant as a matter of law." *Id.* at 707. Most importantly to this case, we also found error in the trial court's reliance upon the victims' mental health as a basis for incompetency, because the appellee had failed to raise that specific issue to the court:

> This issue was not raised by [the appellee] in his motion to preclude the victims from testifying. A trial court should not act as a party's advocate. By *sua sponte* partially deciding a motion to preclude the victims from testifying on a ground not raised by defense counsel, the trial court deprived the Commonwealth of an opportunity to be heard and inappropriately acted as an advocate for the defense.

*Id.* at 708.

Today's Majority argues that *Pena* does not control. The Majority claims that *Pena* stands only for the "non-controversial position that a trial court cannot base its decision on an argument not advanced before it where no evidence supports that position." Maj. Op. at 1173. However, the Majority cites no portion of our *Pena* opinion that so holds. The Majority's "noncontroversial" interpretation of *Pena* actually ignores the clear language of our opinion there, which is worth citing a second time: "By *sua sponte* partially deciding a motion to preclude the victims from testifying on a ground not raised by defense counsel, the trial court deprived the Commonwealth of an opportunity to be heard and inappropriately acted as an ad-

vocate for the defense." *Pena*, 31 A.3d at 708. Notably, this dispositive language is not qualified or limited by the terms interjected into the case by the Majority here. *Pena* simply does not stand for the proposition that a trial court must refrain from acting as an advocate for a party only when there is no evidence in the record to support such an action. Rather, *Pena* holds unequivocally that a trial court should never act as an advocate for a particular party. Yet, that is precisely what the juvenile court did here for Appellee, an action which effectively sidelined the Commonwealth from the adversarial proceedings in this case.

A trial court always must avoid acting as an advocate in legal proceedings. This ensures that each party enjoys a full and fair opportunity to litigate on behalf of whatever interest that party wishes. Here, the court compromised the Commonwealth's interests in prosecuting this juvenile. The Commonwealth's interests in prosecuting and deterring violations of the Crimes Code are not diminished merely because this is a juvenile delinquency proceeding.

I have reviewed the record in its entirety, and have found no references to 42 Pa.C.S. § 6338(c) in any of Appellee's filings or arguments. When given the opportunity before the hearing to set forth the bases for his suppression motion, Appellee did not invoke subsection 6338. Appellee admits that he did not cite subsection 6338(c) in the juvenile court, but now argues that subsection 6338(c) was fairly encompassed by his argument to the juvenile court that the court should suppress the statement based upon its plenary authority under the Juvenile Act. Appellee maintains that "the courts of this Commonwealth have consistently found that a court acting pursuant to the Juvenile Act has broad discretionary powers guided by

the overriding principle of acting to provide care, protection, and wholesome mental and physical development of children coming with the provisions of the Juvenile Act." Brief for Appellee at 8 (quoting *In re Frederick F.*, 400 Pa.Super. 542, 583 A.2d 1248, 1253 (1990)). Appellee contends that application of subsection 6338(c) fell within this discretionary power, and that its application was fairly encompassed by Appellee's argument in the court below. I disagree.

Under Appellee's rationale, pursuant to the juvenile court's plenary authority under the Juvenile Act, no legal basis for suppression would be off limits, so long as the court believed that suppression best served the interest of the accused juvenile according to the broadest terms of the Juvenile Act. Appellee's umbrella claim knows no bounds, acknowledges no limits. In their pre-hearing filings, juveniles would not have to set forth any particular basis for relief. On the strength of Appellee's argument, a juvenile would need only to aver that a confession should be suppressed "pursuant to the trial court's plenary authority" and could then hope that the juvenile court would find some arguable rationale or basis to suppress the juvenile's statements. While I recognize the necessity of affording some latitude in determining what points fairly are encompassed by a juvenile's presentation of issues, the leeway that Appellee seeks in this case simply is too broad to comport with accepted principles of judicial review.

Moreover, to accept such a broad interpretation of Appellee's plenary authority claim would be to ignore the core principles that this Court elucidated in *Pena*. We found error in *Pena* because the trial court acted as an advocate for the defense, seeking out and applying a remedy not requested by the appellee. By endorsing Appellee's plenary authority claim here, the juvenile court did precisely what we

rejected in *Pena*. Further, accepting Appellee's approach would place the Commonwealth at a severe disadvantage. As in *Pena*, the Commonwealth would not be able to respond to, or argue against, claims that the juvenile court might find while researching the law pursuant to its alleged plenary authority.

Subsection 6338(c) is not an innocuous subsidiary of the general provisions of the Juvenile Act, nor is it a statute that reasonably can be foreseen to be relevant to a case by mere reference to the juvenile court's plenary authority. Section 6338(c) is a distinct statutory provision, the applicability of which to this case was far from clear. The juvenile court was required to perform a complex exercise in statutory construction to ascertain the section's applicability and enforcement in this case. Because the matter was not first raised by Appellee, the Commonwealth had no notice that the statute would be considered by the juvenile court. Neither did the Commonwealth have a reasonable opportunity to argue against the statute's application to the present set of circumstances.

The Majority holds that we need not vacate and remand this case because: (1) we may affirm on any basis; and (2) the parties have briefed and argued the substance of the issue. *See* Maj. Op. at 1170–71, 1174. In other words, the Majority believes that it would be a waste of judicial resources to remand the case when we can decide the issue now. While I agree that we **may** affirm on any basis, there is no requirement that we **must** utilize such a procedure at every available opportunity. *See* Maj. Op. at 1170 ("Moreover, it is a well-settled doctrine in this Commonwealth that a trial court **can** be affirmed on any basis."; "The precept **may** be applied even though the reason for sustaining the judgment was not raised in the trial court, relied on by that trial court in

reaching its decision, or brought to the attention of the appellate courts.") (citing Thomas G. Saylor, *Right for Any Reason; An Unsettled Doctrine at the Supreme Court Level and an Anecdotal Experience with Former Chief Justice Cappy*, 47 Duq. L.Rev. 489, 490 (2009)) (emphasis added). In this case, I would find that sufficient reason exists to forego this approach and, instead, to remand the matter to the juvenile court.

By deciding the issue now, the Majority demonstrably turns a blind eye to the juvenile court's improper development and application of a legal theory not advanced by the juvenile himself. It seems to me that this weakens, if not cripples, the clear dictates of *Pena*, and in so doing diminishes incrementally the absolutely essential role that dual advocacy plays in our judicial system. We should not take such action in the name of judicial economy.

Nor would I ignore the juvenile court's error in this case merely because the Commonwealth now has had the opportunity to brief and argue in our Court the legal issue presented in this appeal. The results of a hearing are often unpredictable. The goals and values of our judicial system are best (and, I daresay, only) served when a court considers both sides of a legal argument. There is no telling how a lower court will rule after a full consideration of both sides. Moreover, a lower court's ruling has consequences, both financial and legal. The losing party must decide whether to expend the resources necessary to appeal. The losing party bears the costs of an appeal, and shoulders the legal burdens associated with the various standards of review that we employ with rigor. To ignore the juvenile court's error in this case provides no incentive to our trial courts to avoid engaging in improper advocacy to the disadvantage of a party.

I must emphasize that I express no criticism here of the juvenile court's industry and intention. Moreover, I emphasize as well that my view of this case is limited to the circumstance in which the juvenile court has ruled upon a suppression motion without affording the parties their right to be heard on the court's asserted basis for the ruling. Plainly, this circumstance is distinguishable from one in which a juvenile court recognizes the potential applicability of a doctrine not raised by the litigants, and then invites them to brief and/or argue the matter, with time for due preparation before a ruling issues. We rely upon our judges to exercise their judgment in the service of justice. I would not restrict the application of that judgment to those instances in which attorneys have initiated the discussion. This would disserve the interests of justice and confound a practice that is employed by the courts of this Commonwealth on a regular and salutary basis. However, it is inconsistent with our adversarial system for a court to develop (whether through post-hearing research or by other means) a doctrine unmentioned by either party, and then to apply that doctrine without affording the parties the opportunity to address it before the court makes a ruling, as occurred in this case. Such an approach transforms judicial probity into impermissible advocacy from the bench.

I would reverse the juvenile court's April 6, 2012 suppression order and remand the case for proceedings consistent with this opinion. Consequently, I would not, as the Majority does, reach the merits of Appellee's substantive issue. I respectfully dissent.