J-A20033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:  T.S | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  COMMONWEALTH OF | : | |
| PENNSYLVANIA | : | No. 1537 WDA 2015 |

Appeal from the Order entered September 1, 2015
in the Court of Common Pleas of Jefferson County,
Criminal Division, No(s):  CP-33-JV-30-2015

BEFORE:  BOWES, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:             **FILED AUGUST 22, 2016**

The Commonwealth of Pennsylvania ("the Commonwealth") appeals the juvenile court's Order granting the Motion to Suppress filed by T.S.  We affirm.

In 2013, T.S. (born July 5, 1999), previously adjudicated delinquent on unrelated charges, was placed in a residential treatment facility ("the facility") for adolescents.  At the facility, T.S. received counseling for his delinquent behavior, on-grounds schooling, and sex offender specific programming in the sexually aggressive youth unit.[1]  In April 2014, as part of his sex offender treatment, T.S. was administered a clinical polygraph

---

[1] Although T.S. had never been adjudicated on allegations of sexual crimes, several years earlier he had admitted to engaging in intercourse and other sexual acts with his younger sister, E.S., on numerous occasions.  Due to their young ages at the time of these incidents (T.S. was 9 and E.S. was 6), the Commonwealth had determined that a delinquency allegation was not warranted.  *See* N.T., 8/24/15, at 46.

examination, during which he made sexual allegations and disclosures, including an admission that he had sexually assaulted E.S. in September 2013. In September 2014, Jefferson County Detective William Felmlee ("Detective Felmlee") and Chief Juvenile Probation Officer Paul Ruffner ("Probation Officer Ruffner") went to the facility to interview T.S. regarding the admissions he made during the polygraph examination. During the interview, Detective Felmlee and Probation Officer Ruffner initially told T.S. that they were there to talk about the sexual allegations that T.S. had made during the polygraph examination.[2] However, Detective Felmlee then presented what he knew of the admissions that T.S. had made during the polygraph examination regarding his sexual assault of E.S., and asked T.S. about his polygraph admissions. T.S. then re-affirmed the admissions he had made during the polygraph examination, including his admission that he had sexually assaulted E.S. in September 2013.

On December 4, 2014, Detective Felmlee interviewed E.S., who initially denied that anything sexual had recently occurred between her and T.S. However, Detective Felmlee then advised E.S. that he, in fact, knew that more had occurred between her and T.S. E.S. then became emotional, and disclosed that T.S. had threatened her when their father was in prison, and that she had engaged in various sexual acts with him, including performing oral sex on T.S. on several occasions.

---

[2] The record indicates that T.S. is also a victim of sexual abuse.

Thereafter, the Commonwealth filed a Petition alleging delinquency by T.S. (two counts of indecent assault). T.S. filed an omnibus pretrial Motion, which included a Motion to Suppress. On September 1, 2015, the juvenile court entered an Order granting the Motion to Suppress, and directing that all statements made by T.S. and E.S., "as derived from the admissions [T.S.] made during the polygraph [examination,]" were suppressed. Juvenile Court Order, 9/1/15, at 1. The Commonwealth filed a timely Notice of Appeal, certifying that the Order suppressing the statements of T.S. and E.S. would terminate or substantially handicap its delinquency proceedings. **See** Pa.R.A.P. 311(d). Thereafter, the Commonwealth filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

The Commonwealth presents the following issues for our review:

1. [Whether t]he juvenile court erred in applying the "fruit of the poisonous tree" doctrine, a constitutional derivative evidence exclusionary rule, in conjunction with 42 Pa.C.S.A. § 6338(c) [of the Juvenile Act,[3]] to suppress statements that [T.S.] made to [Detective Felmlee] that were not made during screening or assessment[,] when [section] 6338(c) does not provide for such remedy or additional protection[?]

2. [Whether t]he juvenile court erred in applying the "fruit of the poisonous tree" doctrine, a constitutional derivative evidence exclusionary rule, in conjunction with [section] 6338(c)[,] to suppress statements that [E.S.] made to [Detective Felmlee] that were not made during screening or assessment[,] when [section] 6338(c) does not provide for such remedy or additional protection[?]

Brief for the Commonwealth at 3 (emphasis omitted, footnote added).

---

[3] **See** 42 Pa.C.S.A. §§ 6301-6375.

> When reviewing the propriety of a suppression order, we are required to determine whether the record supports the factual findings of the suppression court, and we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. Since [the j]uvenile prevailed below, we consider only the evidence of [the j]uvenile and so much of the Commonwealth's evidence that is un-contradicted when read in the context of the entire record. Concomitantly, where the questions presented concern legal questions, we are not bound by the suppression court's determinations and our standard of review is *de novo.*

*In re T.P.*, 78 A.3d 1166, 1169 (Pa. Super. 2013).

As the Commonwealth's issues are related, we will address them together. In its first issue, the Commonwealth concedes that, pursuant to 42 Pa.C.S.A. § 6338(c)(1),[4] the statements made by T.S. during the polygraph examination are inadmissible at a proceeding to determine whether T.S. committed a delinquent act. Brief for the Commonwealth at 9-10. However, the Commonwealth contends that the juvenile court erred in applying the "fruit of the poisonous tree" doctrine to suppress the statements that T.S. made to Detective Felmlee. *Id*. at 10. The Commonwealth asserts that the doctrine is not referenced in section 6338(c), which controls statements and information obtained during screening or assessment. *Id*. The Commonwealth claims that the juvenile

---

[4] Section 6338(c)(1) provides as follows: "No statements, admissions or confessions made by[,] or incriminating information obtained from[,] a child in the course of a screening or assessment that is undertaken in conjunction with any proceedings under this chapter, including, but not limited to, that which is court ordered, shall be admitted into evidence against the child on the issue of whether the child committed a delinquent act under this chapter or on the issue of guilt in any criminal proceeding." 42 Pa.C.S.A. § 6338(c)(1).

court rendered its decision "without citing any applicable authority nor providing any substantive analysis," and merely stated that, because "[T.S.'s] admissions to [Detective] Felmlee cannot be divorced from the polygraph results, the inculpatory statements [T.S.] made on September 11, 2014 must also be suppressed." *Id*. (citing Juvenile Court Opinion, 9/1/15, at 2.

The Commonwealth also argues that there is nothing in section 6338 that prohibits (1) the disclosure of statements made by juveniles to law enforcement; (2) the initiation of an investigation as a result of the disclosure of that information; (3) the discovery of the factual basis underlying the statements through other means; (4) an interview of the alleged victim of the statements; or (5) the use of derivative evidence (*i.e.*, evidence developed by law enforcement after they were informed of the statements made by the juvenile during the assessment) to prove that the juvenile committed a delinquent act. *Id*. at 12. The Commonwealth contends that section 6338 creates a purely statutory exclusionary rule, and that no constitutional violation need be shown in order for the section to apply. *Id*. at 13. The Commonwealth claims that, because section 6338 does not create a constitutional right, the application of a derivative evidence exclusionary rule, such as the fruit of the poisonous tree doctrine, "provide[s] a windfall and a right that the legislature presumably never intended." *Id*. at 14. On this basis, the Commonwealth argues that the

juvenile court's application of the fruit of the poisonous tree doctrine constitutes judicial overreach and improper application of section 6338. *Id*. The Commonwealth contends that, because T.S.'s right to exclude from evidence the statements he made during the polygraph examination has not been violated, Detective Felmlee's questions regarding those statements violated no right under section 6338. *Id*. at 15-16.

In its second issue, the Commonwealth contends that the juvenile court also erred in suppressing the statements made by E.S. to Detective Felmlee when he interviewed her. *Id*. at 17. The Commonwealth asserts that the juvenile court conducted no "analysis of whether the 'tainted' (in its view) polygraph, or its use in the investigation, had been sufficiently attenuated by E.S.'s voluntary statement to [Detective] Felmlee." *Id*. at 18. The Commonwealth claims that "the juvenile court gave no consideration of the fact that E.S. is a living, breathing, volitional human being who can decide for herself whether she wants to cooperate and give a voluntary statement about T.S.[,] not that she was not coerced to make such a statement." *Id*. at 19. The Commonwealth argues that Detective Felmlee "merely assured [E.S.] that he was aware that more had occurred to her as recently as when her father was in jail[,]" and that E.S.'s subsequent decision to provide him with a detailed disclosure of multiple instances of sexual abuse by T.S. was voluntary, and not a coercive confrontation of the statements made by T.S. in the polygraph examination. *Id*. at 20.

> Broadly, the entirety of [section] 6338 of the Juvenile Act codifies by statute the right to confront witnesses, present evidence, the right to remain silent and the right against self-incrimination engrafted in the federal constitution's Fifth and Sixth Amendments and Article I, § 9 of the Pennsylvania Constitution. Simply put, [section] 6338 clarifies that some of the constitutional protections afforded adult criminals apply to juvenile proceedings even though such proceedings are not considered criminal.

*In re T.P.*, 78 A.3d at 1172.

> The language of the Juvenile Act provisions in question[, *i.e.*, section 6338(c)(1),] reveals that the Juvenile Act is intended to foster truthfulness and full disclosure by a juvenile in order to further treatment. By prohibiting incriminating statements made during assessments from being used in delinquency and adult prosecutions, this goal is served—a juvenile can freely disclose any transgressions without fear of his statements being used in connection with additional juvenile delinquency proceedings.

*Id.* at 1175-76.

In its Pa.R.A.P. 1925(a) Opinion, the juvenile court clarified that, when granting T.S.'s Motion to Suppress, it conducted a statutory analysis under section 6338, and did not base its ruling on a constitutional analysis. *See* Juvenile Court Opinion, 11/3/15, at 1. The juvenile court further noted that "[i]t utilized the phrase 'fruit[] of the poisonous tree' only as a shorthand way to convey its conclusion that the manner in which the Commonwealth acquired the inculpatory statements amounted to a violation of [section] 6338's prohibition[,] such that the statute demanded their suppression." *Id*.; *see also id*. (wherein the juvenile court expressly stated that it did not apply the fruit of the poisonous tree doctrine). Moreover, in its Opinion

issued in connection with its Order granting T.S.'s Motion to Suppress, the juvenile court specifically noted that, although T.S. had raised both constitutional and statutory challenges in his suppression Motion, T.S.'s counsel indicated following the suppression hearing that "the statutory issue was the linchpin of his [M]otion." ***See*** Juvenile Court Opinion, 9/1/15, at 1 n.1. The juvenile court further indicated that, in light of counsel's comment, "and because the statute decisively addresses the matter," it had confined its analysis to the statutory issue. ***See id***. Thus, we conclude that the Commonwealth's claims that the juvenile court undertook a constitutional analysis, and that it applied the fruit of the poisonous tree doctrine, lack merit.

Additionally, the record supports the factual findings of the juvenile court, and its legal conclusions drawn therefrom are not in error. ***See*** Juvenile Court Opinion, 9/1/15, at 1-3 (wherein the juvenile court provided an explanation for its determination that the statements made to Detective Felmlee by T.S. and E.S. should be suppressed pursuant to section 6338). We agree with the reasoning of the juvenile court and therefore affirm its Order granting T.S.'s Motion to Suppress. ***See id***.

Order affirmed.

J-A20033-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/22/2016

**IN THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY,**
**PENNSYLVANIA**
**CRIMINAL DIVISION**

FILED

IN THE INTEREST OF: T. S.      :

                                  :     **CP-33-JV-30-2015**

2015 SEP -1 A 10: 03

TONYA S. GEIST
JEFFERSON COUNTY
PROTHONOTARY AND
CLERK OF COURTS

## OPINION ON JUVENILE'S OMNIBUS MOTION

### Factual and Procedural History

In an omnibus pretrial motion, the subject juvenile, ███████ ("███████"), asserted a motion to dismiss the petition against him and a motion to suppress the inculpatory statements that underlie the instant charges. Because the statements were utilized or obtained in violation of his constitutional and statutory rights, he argued, they could not be employed to support additional delinquency allegations.

At a hearing held August 24, 2015, the parties stipulated to Exhibits 1-3, which they agreed accurately summarized ███████ history with the judicial system, the substance of his disclosures to Detective William Felmlee ("Felmlee") on September 11, 2014, and the information the detective subsequently gleaned from ███████ sister and victim, ███████ ("███████"). Through testimony from Felmee, Chief Probation Officer Paul Ruffner ("Ruffner") and Sexually Aggressive Youth ("SAY") therapist Carl Cook, the Commonwealth further detailed the relevant polygraph procedure and resulting interview. ███████ did not challenge that testimony, and there were no inconsistencies and nothing about the witnesses' demeanor that caused the Court to question their credibility. The only question, therefore, is how the undisputed facts interact with the Constitution and Juvenile Act for purposes of the instant allegations.[1]

### Discussion

Section 6338 of the Juvenile Act provides that statements elicited from a child, if obtained pursuant to a violation of Chapter 63 or the Fifth Amendment, shall not be admissible in a criminal proceeding. 42 Pa. C.S.A. § 6338(b). It further specifies,

(1) No statements, admissions or confessions made by or incriminating information obtained from a child in the course of a screening or assessment that is undertaken in conjunction with any proceedings under this chapter, including, but not limited to, that which is court ordered, shall be admitted

---

[1] Following the hearing, counsel for ███████ the statutory issue was the linchpin of his motion, and because the statute decisively addresses the matter, the Court will confine its discussion accordingly.



into evidence against the child on the issue of whether the child committed a delinquent act under this chapter or on the issue of guilt in any criminal proceeding.

§ 6338(c). That provision, which does not admit any exceptions, demands that the motion to suppress be granted in this case.

Because it was Ruffner who signed the polygraph waiver without first explaining its contents to his client, T.S. was unaware that the results could be unfavorable, that the examiners were mandatory reporters in the event that he identified another victim, or that any information obtained during a polygraph could be used against him. He knew, though, that polygraphing was a routine part of the SAY program and that full disclosure was integral to his success. With Ruffner having encouraged him to do so, therefore, T.S. revealed during a 2014 polygraph that he had sexually assaulted his sister the year before. Pursuant to § 6338, those revelations inadmissible to prove the allegations set forth in the instant petition.

The present facts fit squarely within the Superior Court's ruling in *In the Interest of T.P.*, 78 A.3d 1166 (Pa. Super. 2013), where a juvenile in placement and participating in a treatment program that incorporated polygraph examinations challenged the Commonwealth's attempt to use incriminating statements he had made during a pre-polygraph interview to support new charges. *Id.* at 1168-69. In this case, of course, it was the actual polygraph during which T.S. made the admissions. That is not a distinguishing difference, though.

Responding to the Commonwealth's argument that T.P.'s disclosures were made during "treatment" rather than an "assessment" and thus were not covered under the statute, the Superior Court looked to the Juvenile Act's definition of the term "assessment" and concluded that the pre-polygraph interview, which was part of the court-ordered sex-offender program in which T.P. was participating, constituted both a clinical interview and a test and, as such, was inadmissible. *Id.* at 1175. *See also* § 6302 (defining "assessment" to include "[a] clinical interview and the administration of a formal test and instrument"). Insofar as an actual polygraph is unquestionably a formal test or instrument, then, T.S.'s position is virtually unassailable under the Superior Court's reasoning.

Because T.S.'s admissions to Felmlee cannot be divorced from the polygraph results, the inculpatory statements he made on September 11, 2014 must also be suppressed.

2

The Court does not question the detective's integrity. He gave **T.S.** his *Miranda* warnings, told him he was there as a police officer investigating sexual allegations that could result in additional charges, apprised him that he did not have to participate and that any statements he made could be used against him, and advised that he had the right to have his attorney present. Nonetheless, it was not until Felmlee revealed his knowledge of the polygraph results and said he wanted to discuss them that **T.S.** opened up about victimizing **E.S.** Prior to that, he had only gone so far as to admit to having inappropriate sexual fantasies.

It is far from clear, therefore, that the district attorney would have become privy to the details about **T.S.'s** sexual relationship with **E.S.** had Felmlee not used the polygraph results to elicit them. It is highly unlikely, in fact, when even **E.S.** was keeping her brother's secret until the detective "assur[ed] her that he was aware that more had occurred to her as recent[ly] as when her father was in jail." Exh. 1. In Fifth Amendment parlance, then, **T.S.'s** admissions to Felmlee constituted "fruits of the poisonous trees," and in the context of the Juvenile Act, the Commonwealth's intention to use those fruits against him puts it directly at odds with § 6338(c).

The Commonwealth likewise would not have obtained **E.S.'s** damning revelations absent its decision to use **T.S.'s** polygraph results as the direct means by which to obtain her cooperation in developing and pursuing the instant delinquency charges. It follows, therefore, that the same rationale supporting the suppression of **T.S.'s** statements to Felmlee also demands the suppression of **E.S.'s** statements.

3