J. A09012/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| J.M.C., A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  COMMONWEALTH OF | : | No. 1265 MDA 2015 |
| PENNSYLVANIA | : | |


Appeal from the Order Entered June 30, 2015,
in the Court of Common Pleas of Cumberland County
Juvenile Division at No. CP-21-JV-0000086-2015


BEFORE:  FORD ELLIOTT, P.J.E., JENKINS AND PLATT,* JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 21, 2016**

The Commonwealth appeals from the June 30, 2015 order granting J.M.C.'s ***omnibus*** pre-trial motion to suppress inculpatory statements that he made during the course of a court-ordered sex offender treatment program, as well as any evidence stemming from these admissions.  After careful review, we affirm.

The relevant facts and procedural history of this case, as gleaned from the certified record, are as follows.  On September 14, 2010, J.M.C. was adjudicated delinquent of involuntary deviate sexual intercourse ("IDSI") and attempted rape of a child.  (Notes of testimony, 6/1/15 at 3-5.)  On May 12, 2014, the juvenile court modified the disposition for J.M.C. and ordered that he successfully complete the sex offender treatment program

---

* Retired Senior Judge assigned to the Superior Court.

at Adelphoi Village Secure Treatment Center ("Adelphoi Village"). (*Id.* at 4.) As part of his treatment, J.M.C. was required to disclose his sexual history and submit to a polygraph administered by the treatment providers at Adelphoi Village. (*Id.* at 7.) On June 23, 2014, J.M.C. disclosed during a pre-polygraph examination that he had sexually assaulted a number of juveniles, including an autistic boy, S.J. ("the victim"). (*Id.* at 7, 12, 55.) Based upon this disclosure, it was later determined that these sexual assaults occurred between February and August 2009 at a Cumberland County foster home where both J.M.C. and the victim resided. (*Id.* at 9, 18-19; *see also* "Written Allegation," 3/17/15 at 3.) At the time of these sexual assaults, J.M.C. was approximately 14 years old and the victim was between the ages of 8 and 9 years old. ("Written Allegation," 3/17/15 at 3.) J.M.C. was not provided constitutional rights or *Miranda*[1] warnings prior to the polygraph examination and associated interview. (Juvenile court opinion and order, 6/30/15 at 2; findings of fact nos. 8, 9.)

As a result of J.M.C.'s disclosure, this incident was reported to the Pennsylvania Department of Public Welfare ("DPW") and the State Police commenced an investigation. (Notes of testimony, 6/1/15 at 9-11, 17-18.) On November 20, 2014, J.M.C. was interviewed at Adelphoi Village by Trooper David Rush ("Trooper Rush") and Mark Schrode ("Schrode"), a program representative with the Office of Children and Youth and Family

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Services ("CYS"). (*Id.*) During this interview, the only individuals present in the room were Schrode, Rush, and J.M.C. (*Id.* at 13.) Trooper Rush was unable to affirmatively recall whether J.M.C. was given *Miranda* warnings prior to this interview, and no written waiver was ever obtained from J.M.C. (*See* notes of testimony, 6/1/15 at 19-20, 29.) The juvenile court, however, indicated in its June 30, 2015 opinion that Trooper Rush did in fact issue constitutional rights warnings to J.M.C. on November 20, 2014, prior to speaking with him. (*See* juvenile court opinion and order, 6/30/15 at 7 (stating, "[t]he second interrogation of [J.M.C.] does not overcome the evidentiary taint by Trooper [Rush]'s issuance of a constitutional rights warning.").)

Thereafter, on December 1, 2014, State Trooper Nicole Mark ("Trooper Mark") and Schrode went to the victim's home in Cumberland County and spoke with the victim and his foster parents. (Notes of testimony, 6/1/15 at 52-53, 61-63.) During the course of this interview, the victim confirmed that he and J.M.C. had sexual contact when they resided in the same foster home. (*Id.* at 9, 61; *see also* "Written Allegation," 3/17/15 at 1-3.) On December 16, 2014, Rebecca Voss ("Voss"), a staff member with the Over the Rainbow Children's Advocacy Center, interviewed the victim at the request of Schrode. (Notes of testimony, 6/1/15 at 37-39.) Voss testified that she conducted a "blind" interview of the victim, noting that she did not utilize any information about the incident, asked

open-ended questions, and did not specifically bring up J.M.C.'s name. (**Id.** at 42-44.) The victim, however, was aware of why he was being interviewed based upon his contact with Trooper Mark and Schrode two weeks earlier. (Juvenile court opinion and order, 6/30/15 at 3; finding of fact no. 13.) The victim was more forthcoming about the incidents in question during this interview. (Notes of testimony, 6/1/15 at 55.)

On March 17, 2015, J.M.C. was charged with IDSI, unlawful contact with a minor, and indecent assault of a person less than 13 years of age.[2] On April 21, 2015, J.M.C. filed an **omnibus** pre-trial motion to suppress the statements he made during treatment, as well as any evidence derived from his admissions, including the statements of the victim. (**See** "Omnibus Pre-Trial Motion to Suppress Evidence," 4/21/15 at ¶¶ 19-20.) On June 1, 2015, the juvenile court conducted a hearing on J.M.C.'s suppression motion. Following the hearing, the juvenile court granted J.M.C.'s suppression motion on June 30, 2015. In reaching this decision, the juvenile court reasoned as follows:

> [J.M.C.'s] initial statement [on June 23, 2014] was made without the protection of a constitutional rights warning in derogation from criminal law practice. The second interrogation of [J.M.C. on November 20, 2014] does not overcome the evidentiary taint by Trooper [Rush]'s issuance of a constitutional rights warning. In essence, [J.M.C.] was directed if he wanted to complete his court supervision he had to come clean about this sexual past. No amount of law enforcement warning would

---

[2] 18 Pa.C.S.A. §§ 3123(b), 6318, and 3126(a)(7), respectively.

> nullify the Judge's Order to [J.M.C.] to be compliant with the people he dealt with while at Aldephoi [Village]. The Aldephoi [Village] statements were made in a confrontational style setting, which is to say a custodial interrogation within the court mandated facilities for [J.M.C.] This is a violation of both the [Juvenile Act] and the Constitution; therefore, the statements and all derivative evidence obtained as a result of this interrogation must be suppressed.

Juvenile court opinion and order, 6/30/15 at 7-8.

On July 23, 2015, the Commonwealth filed a timely notice of appeal, certifying, pursuant to Pa.R.A.P. 311(d), that the June 30, 2015 order will terminate or substantially handicap the prosecution. On July 27, 2015, the juvenile court directed the Commonwealth to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925. The Commonwealth filed its timely Rule 1925(b) statement on August 6, 2015. The record reflects that the juvenile court did not file a Rule 1925(a) opinion.

On appeal, the Commonwealth raises the following issues for our review:

> I. Whether the juvenile court erred in suppressing [J.M.C.'s] statements to [Trooper Rush] and CYS worker [Schrode] regarding [J.M.C.'s] sexual abuse of another juvenile victim?

> II. Whether the juvenile court erred in suppressing the juvenile **victim's** statements and testimony regarding J.M.C.'s sexual abuse because the statements and testimony relate to the victim's personal experience and recollection which dissipates any taint associated with [J.M.C.'s] disclosures?

Commonwealth's brief at 2 (emphasis in original). For the ease of our discussion, we have elected to address the Commonwealth's claims simultaneously.

"When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate." *In re O.J.*, 958 A.2d 561, 564 (Pa.Super. 2008), *appeal denied*, 989 A.2d 918 (Pa. 2009) (citation omitted). "Since Juvenile prevailed below, we consider only the evidence of Juvenile and so much of the Commonwealth's evidence that is un-contradicted when read in the context of the entire record." *In re T.P.*, 78 A.3d 1166, 1169 (Pa.Super. 2013), *appeal denied*, 93 A.3d 463 (Pa. 2014) (citation omitted). "Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous." *Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015), *appeal denied*, 135 A.3d 584 (Pa. 2016) (citation omitted; brackets in original). However, "where the questions presented concern legal questions, we are not bound by the suppression court's determinations and our standard of review is *de novo*." *In re T.P.*, 78 A.3d at 1169 (citation omitted).

"The Juvenile Act, 42 Pa.C.S.A. § 6301[,] *et seq.*, is designed to effectuate the protection of the public by providing children who commit 'delinquent acts' with supervision, rehabilitation, and care while promoting responsibility and the ability to become a productive member of the community." *Commonwealth v. Brown*, 26 A.3d 485, 491-492 (Pa.Super. 2011), citing 42 Pa.C.S.A. § 6301(b)(2). Section 6338 of the Juvenile Act ("the Act") codifies by statute the rights to confront witnesses, present evidence, remain silent, and to be free from self-incrimination, as set forth in the Fifth and Sixth Amendments of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution. Specifically, Section 6338(c) governs statements and information obtained from juveniles during a screening or assessment. This section provides, in relevant part, as follows:

> **No statements, admissions or confessions made by or incriminating information obtained from a child in the course of a screening or assessment** that is undertaken in conjunction with any proceedings under this chapter, **including, but not limited to, that which is court ordered, shall be admitted into evidence against the child on the issue of whether the child committed a delinquent act** under this chapter or on the issue of guilt in any criminal proceeding.

*Id.* at § 6338(c)(1) (emphasis added).

This court has recognized that allowing these types of statements to be admitted into evidence would frustrate the Act's underlying goals of treatment and rehabilitation. *See In re T.P.*, 78 A.3d at 1173.

> The language of the Juvenile Act provisions in question reveals that the Juvenile Act is intended to foster truthfulness and full disclosure by a juvenile in order to further treatment. By prohibiting incriminating statements made during assessments from being used in delinquency and adult prosecutions, this goal is served—a juvenile can freely disclose any transgressions without fear of his statements being used in connection with additional juvenile delinquency proceedings. The Commonwealth's position [that these statements should be admissible] would defeat a critical component of juvenile rehabilitation, foster suspicion and the potential withholding of information by juveniles, violate a duly-enacted statutory provision, and give rise to possible constitutional concerns.

*Id.* at 1175-1176.

Instantly, the Commonwealth concedes that the statements J.M.C. made during his court-ordered pre-polygraph interview and polygraph examination were properly suppressed, pursuant to Section 6338(c)(1). (Commonwealth's brief at 7-10; *see also* notes of testimony, 6/30/15 at 68.) The Commonwealth, however, contends that J.M.C.'s post-polygraph statements [on November 20, 2014], as well as those of the victim, were admissible. (Commonwealth's brief at 9-16.) In support of this contention, the Commonwealth maintains that J.M.C.'s subsequent disclosures to Trooper Rush and Schrode during the November 20, 2014 interview were not illegally obtained in violation of *Miranda*, were not involuntary or coerced, and were not inadmissible as "fruit of the poisonous tree." (Commonwealth's brief at 9-16.) The Commonwealth further contends that the juvenile court erred in suppressing the statements the victim made

during the December 1 and December 16, 2014 interviews because "[they] relate to the victim's personal experience and recollection which dissipates any taint associated with [J.M.C.'s] disclosures." (*Id.* at 17.) For the following reasons, we disagree.

In *In re C.O.*, a panel of this court recently addressed whether a juvenile court erred in suppressing incriminatory statements that a juvenile made to a youth counselor and CYS caseworker during the course of a court-ordered treatment program. *In re C.O.*, 84 A.3d 726, 731 (Pa.Super. 2014), *appeal denied*, 97 A.3d 742 (Pa. 2014). In ruling that the questioning of the juvenile while in custody at a residential treatment facility constituted an "interrogation" within the meaning of *Miranda*, the *In re C.O.* court reasoned as follows:

> To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects subject to custodial interrogation by law enforcement officers must be warned that they have the right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney. Juveniles, as well as adults, are entitled to be apprised of their constitutional rights pursuant to *Miranda*. If a person is not advised of his *Miranda* rights prior to custodial interrogation by law enforcement officers, evidence resulting from such interrogation cannot be used against him. A person is deemed to be in custody for *Miranda* purposes when [he] is physically denied of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.

> In order to trigger the safeguards of **Miranda**, there must be both custody and interrogation. Interrogation is defined as police conduct calculated to, expected to, or likely to evoke [an] admission. **Moreover, [u]nder certain circumstances, individuals who are not law enforcement personnel nevertheless possess the status of law enforcement for purposes of custodial interrogation.**

**In re C.O.**, 84 A.3d at 731–732 (citations and internal quotation marks omitted; brackets in original; emphasis added). The **In re C.O.** court held that the juvenile's statements were properly suppressed, noting that the treatment counselor and CYS caseworker, while not police officers, were required to provide **Miranda** warnings to the juvenile because they were investigating him and their questions elicited incriminating responses that formed the basis for the prosecution. **In re C.O.**, 84 A.3d at 736.

Similarly, in the instant matter, the June 23, 2014 pre-polygraph interview and examination wherein J.M.C. disclosed to the Adelphoi Village treatment providers that he sexually assaulted the victim was the functional equivalent of an interrogation, sufficient to trigger the protections of Section 6338(c)(1). As in **In re C.O.**, a component of J.M.C.'s court-ordered sex offender treatment program required that he fully cooperate with the treatment providers and disclose his past sexual history. During the course of this examination, the treatment providers elicited inculpatory responses from J.M.C., without the benefit of **Miranda** warnings. These statements were subsequently reported to the DPW and led directly to a state police

investigation. Consequently, it logically follows that any statements or evidence derived from this illegal interrogation, including those by J.M.C. in a subsequent interview with Trooper Rush and Schrode, as well as any of the allegations of the victim obtained as a direct result of J.M.C.'s court-mandated disclosure, should be suppressed as "fruit of the poisonous tree."

"The 'fruit of the poisonous tree' doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts." ***Commonwealth v. Johnson***, 68 A.3d 930, 946 (Pa.Super. 2013) (citations omitted). "A fruit of the poisonous tree argument requires an antecedent illegality." ***Id.*** (citation omitted). Courts in this Commonwealth have repeatedly recognized that,

> [w]e need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. **Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.**

***Commonwealth v. Loughnane***, 128 A.3d 806, 815 (Pa.Super. 2015) (emphasis added), citing ***Commonwealth v. Cunningham***, 370 A.2d 1172, 1176-1177 (Pa. 1977), quoting ***Wong Sun v. United States***, 371 U.S. 471, 487-488 (1963).

Here, an antecedent illegality occurred, as the Adelphoi Village treatment providers "possess[ed] the status of law enforcement for purposes

of custodial interrogation" at the time J.M.C. made the incriminating statements. *See In re C.O.*, 84 A.3d at 732. Moreover, the statements given by J.M.C. on November 20, 2014, as well as any evidence derived from this interview, were not purged of the primary taint of this initial illegal interrogation. As the juvenile court aptly recognized in its opinion, "[t]he second interrogation of [J.M.C. on November 20, 2014] d[id] not overcome the evidentiary taint by Trooper [Rush]'s issuance of a constitutional rights warning." (*See* juvenile court opinion and order, 6/30/15 at 7.)

The state police were able to secure the victim's statements about the abuse as a direct result of J.M.C.'s initial disclosure that he sexually assaulted a number of juveniles in 2009, and not through any independent investigation or source. The application of the "independent source doctrine" is only proper "where the independent source is to be truly independent from both the tainted evidence and the police or investigative team which engaged in the misconduct by which the tainted evidence was discovered." *Commonwealth v. Henderson*, 47 A.3d 797, 799 (Pa. 2012), *cert. denied*, 133 S.Ct. 435 (2012) (citation and internal quotation marks omitted). Herein, the state police possessed no information as to any victims or witnesses in this case, or that J.M.C. had even committed the crimes in question, prior to the disclosures he made as part of his court-ordered sex offender treatment program. Permitting the Commonwealth to utilize J.M.C.'s statements under these circumstances, as

well as any evidence directly derived from these statements, would frustrate the juvenile court's ability to order sexual offender treatment that requires full disclosure and render the protections afforded by Section 6338(c)(1) of the Act futile. ***See In re T.P.***, 78 A.3d at 1175-1176.

Accordingly, we discern no error on the part of the juvenile court in suppressing the inculpatory statements J.M.C. made during the course of a court-ordered sex offender treatment program, as well as any evidence or statements stemming from these admissions, including those of the victim. Therefore, we affirm the juvenile court's June 30, 2015 suppression order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/21/2016</u>