**COMMONWEALTH of Pennsylvania, Appellee**

v.

**John McCURDY, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 9, 2007.

Filed Feb. 15, 2008.

William M. Pannella, New Castle, for appellant.

Jennifer A. Buck, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: LALLY–GREEN, BOWES and POPOVICH, JJ.

OPINION BY BOWES, J.:

¶ 1 On appeal, John McCurdy questions the sufficiency of the evidence supporting his convictions of corrupt organizations and conspiracy to commit corrupt organizations, claiming that there was no proof that his criminal actions benefited an enterprise with which he was connected. Appellant posits that the evidence indicated that he was a lone operator in his drug selling activities. We affirm.

¶ 2 Appellant was arrested by agents from the Pennsylvania Office of the Attorney General ("Attorney General") pursuant to a statewide grand jury investigation and was charged with two counts each of possession of a controlled substance (cocaine), possession of a controlled substance (cocaine) with intent to deliver, delivery of a controlled substance (cocaine), and one count each of criminal conspiracy to commit possession with intent to deliver a controlled substance, corrupt organizations, and conspiracy to commit corrupt organizations. With the exception of one count of delivery, which did not appear on the verdict slip, Appellant was convicted of all those offenses by a jury on September 27, 2006. On November 3, 2006, the trial court imposed a term of imprisonment of thirteen and one-half to twenty-eight years. This appeal followed resolution of Appellant's motion to modify his sentence.

¶ 3 We first discuss the Attorney General's position that Appellant has waived his sufficiency argument because his Pa.R.A.P.1925(b) statement was too vague. Following the filing of the notice of appeal, Appellant's trial counsel withdrew, and new counsel was appointed. When the order to file a Pa.R.A.P.1925(b) statement was entered, new counsel did not have the transcripts from trial. Counsel therefore raised a general allegation that the evidence was insufficient to sustain the convictions.

¶ 4 The trial court recognized that the statement was necessarily vague since counsel had not participated at trial and had not yet had the opportunity to review that proceeding, and it declined to find waiver. While we are aware of the case law providing that vague statements do not preserve issues on appeal, e.g., Commonwealth v. Lemon, 804 A.2d 34, 37 (Pa.Super.2002), counsel in this case could not have been more specific. We therefore decline to find the issue waived. See Commonwealth v. Laboy, 594 Pa. 411, 936 A.2d 1058 (2007) (under circumstances presented therein, Superior Court erred in finding sufficiency argument waived based upon purportedly unclear Pa.R.A.P.1925(b) statement).

¶ 5 In addition, contrary to the Attorney General's position, Appellant did not waive his sufficiency argument under Pa.R.A.P. 302(a) by failing to raise that issue in the court below. Pa.R.Crim.P. 606(A)(7) expressly provides that a challenge to the sufficiency of the evidence can be raised for the first time on appeal. See Commonwealth v. Causey, 833 A.2d 165 (Pa.Super.2003).

"The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction ... does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the

verdict. . . . [A]ll of the evidence and any inferences drawn therefrom must be viewed in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751 (2000).

*Commonwealth v. Ratsamy,* 594 Pa. 176, 180, 934 A.2d 1233, 1235–36 (2007) (emphasis in original).

¶ 6 In this case, Appellant questions the sufficiency of the evidence only with respect to the establishment of his "association . . . with an enterprise." Appellant's brief at 16. He maintains that he merely "sold [drugs] on his own" without involvement in a criminal organization. *Id.* at 17.[1] Thus, Appellant challenges his convictions of corrupt organizations and conspiracy to commit the same.

∎ ¶ 7 The crime of corrupt organizations is contained in 18 Pa.C.S. § 911(b), and Appellant was convicted under section 911(b)(3), which states, "It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." As noted, Appellant does not claim that he did not conduct a pattern of racketeering activity, suggesting solely that he was not employed by or associated with any enterprise. Enterprise "means any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce and includes legitimate as well as illegitimate entities and governmental entities." 18 Pa.C.S. § 911(h)(3).

¶ 8 The Attorney General's office charged Appellant with selling drugs as part of the enterprise known as the Detroit Drug Operation. Commonwealth witnesses James McCurdy, who is not related to Appellant, Dorothy Ortiz, Jamie Gilmore, Dana Dominick, and Melissa Natale established the following. Appellant sold cocaine in Lawrence County between January 2003 and February 2006. Four witnesses represented that they purchased cocaine directly from Appellant numerous times during that period. Appellant primarily sold that drug from a crack house located at 922 Carson Street, New Castle, which was known as the "Clubhouse," but he also peddled the controlled substance at the Brinton Hill projects. N.T., 9/26/06, at 4. A man known as "Geronimo" was in charge of the Clubhouse. *Id.*

¶ 9 Appellant, who had the street name of "Isiah," sold cocaine from and lived at the Clubhouse intermittently during the pertinent time frame. *Id.* at 7. He sold drugs from the Clubhouse with other drug dealers who had the street names of "Panama," "Izzo," "Kill," and "O.Z." *Id.* at 15. Panama, Kill, Appellant, and Izzo were all from Detroit. Gilmore, who answered the door and operated as a lookout for the drug operation, explained that there were between two and four different drug dealers in the Clubhouse at any given time, and "they would just take turns. You know, one would sell until he would be out." *Id.* at 14.

¶ 10 The drug dealers coordinated their activities, and if one dealer did not have drugs, "then he would tell you, well, go see somebody else, I'm out. Then you would just go to a different dealer in the same house." *Id.* Gilmore specifically testified that Panama, Izzo, Kill, and Appellant "were all like in it [selling drugs] together." *Id.* at 26. She overheard the drug

---

1. While Appellant also claims that there was no "evidence of organized crime," Appellant's brief at 16, it is clear that the statute does not require proof that a defendant was engaged in organized crime. *Commonwealth v. Dellisanti,* 583 Pa. 106, 876 A.2d 366 (2005).

dealers coordinating who would travel to Brinton Hill to sell drugs from that location, and she stated that all of these drug dealers would obtain cocaine from Detroit and would travel with one another to obtain that drug.

¶ 11 Ortiz confirmed the high level of cooperation among these drug dealers, indicating that she had "gotten drugs from [Appellant] and paid Panama, and got drugs from Panama and paid [Appellant], ... [and] they told me themselves that the money could go to either one of them." *Id.* at 70. Ortiz also sold drugs for Appellant, Panama, Geronimo, and Kill. Dominick indicated that she would bring drug users to Appellant so that they could purchase drugs from him. Dominick also personally purchased cocaine from Appellant and observed him hand the money to Panama.

¶ 12 Natale, who sold drugs for those dealers and was romantically involved with Appellant, personally went to Detroit twenty times to retrieve crack and powder cocaine. She testified that before she left for Detroit, she would retrieve money from Kill, Izzo, Appellant, and Panama, and would stop at projects or at houses to obtain the funds from all four drug dealers if they were located elsewhere prior to the trip to purchase cocaine. When she would return from Detroit with the cocaine, "everyone," meaning the four drug dealers, would "meet wherever it was being dropped off." N.T., 9/27/06, at 38. Appellant accompanied her to Detroit "a few times" to purchase cocaine. *Id.* In addition, Natale personally observed O.Z. deliver drugs to Appellant.

¶ 13 This evidence was sufficient to establish that Appellant was involved in an enterprise with Panama, Geronimo, Izzo, Kill, and O.Z. These individuals engaged in the commerce of selling drugs at the Clubhouse in association with each other.

They referred customers to each other when their drugs were gone and allowed each other to collect money from the sale of cocaine. They pooled their money and traveled to Detroit together to purchase the drug. They would retrieve the cocaine in concert. Other individuals would sell drugs on their behalf. They all benefited from the services of the same individual operating as a police lookout to protect the operation.

¶ 14 While Appellant claims that he was not part of an enterprise by focusing upon an isolated statement by Gilmore that Appellant "did his own thing," Appellant ignores the other aspects of Gilmore's testimony as well as the testimony of the other Commonwealth witnesses. N.T., 9/26/06, at 14. Gilmore completely contradicted this statement by stating that the individual drug dealers did cooperate while selling drugs. This latter observation was confirmed by the other Commonwealth witnesses. The evidence also proved that all of the drug dealers pooled their money and purchased their drugs from a larger operation in Detroit and would travel together to purchase the drugs. They also associated with each other to gather the proceeds from drugs sold on their behalf by other lower-level dealers.

¶ 15 Under the pertinent standard, we view all of the evidence in the light most favorable to the Commonwealth and thus refuse to view Gilmore's lone comment as conclusive proof that Appellant was a solo operator. The overwhelming evidence produced by the Commonwealth firmly established that Appellant was involved in an enterprise with four other drug dealers located at the Clubhouse.

¶ 16 Appellant also places undue emphasis on the fact that he sold drugs from the Clubhouse intermittently during the three-

year time frame covered in this prosecution. The evidence did indicate that Appellant would be absent from the Clubhouse for certain periods. However, that fact does not negate the Commonwealth's evidence that when he did come to the Clubhouse, he sold cocaine and that he sold and purchased that drug in concert with other drug dealers at that locale.

¶ 17 Judgment of sentence affirmed.