J-A29019-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARLOS EVANS | : | |
| | : | |
| Appellant | : | No. 451 WDA 2019 |

Appeal from the Judgment of Sentence Entered, January 7, 2019,
in the Court of Common Pleas of Washington County,
Criminal Division at No(s):  CP-63-CR-0000787-2016.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARLOS EVANS | : | |
| | : | |
| Appellant | : | No. 452 WDA 2019 |

Appeal from the Judgment of Sentence Entered, January 7, 2019,
in the Court of Common Pleas of Washington County,
Criminal Division at No(s):  CP-63-CR-0000816-2016.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    FILED MARCH 06, 2020

_____

[*] Retired Senior Judge assigned to the Superior Court.

Carlos Evans appeals from the judgment of sentence imposed after the court found him guilty of one count of possession of a controlled substance with intent to deliver at two different docket numbers.[1]  After careful review, we affirm.

Evans' convictions arose after he sold drugs to a confidential informant and police subsequently searched his apartment.  The trial court set forth the facts for the first charge as follows:

> Regarding case 816-2016, police officer Nicholas Powell ("Powell") testified that the Washington County Drug Taskforce (WCDT) was conducting operations to investigate sales of contraband substances in the City of Washington. Pursuant to this effort, Powell used a [Confidential Informant ("CI")] to engage a controlled purchase of heroin from [Evans] on January 6, 2016.  According to Powell, he and several other members of the WCDT, including Police Detective Michael Manfredi (Manfredi), determined that the CI would contact [Evans] by telephone to arrange a meeting for the purchase of heroin.  Manfredi, a certified officer under the Wiretap Act who is permitted to engage consented recording by one party, testified that he filed a written request with the Washington County District Attorney to make telephonic and video recordings involving the CI and [Evans].
>
> Powell explained that prior to the controlled heroin purchase, he and Manfredi physically searched the CI to ensure that the CI had no controlled substances on his person. Further, Powell and Manfredi searched the CI's entire automobile, including areas that might be hidden compartments, to ensure that it did not contain any controlled substances.  According to Powell, no one other than the CI was in the CI's car after the search.  After the completed searches, the CI called [Evans] to arrange the purchase.  [Manfredi recorded this call.  He also listened to

_____

[1] 35 P.S. § 780-113(a)(30).

the conversation between the CI and Evans]. Evans did not answer the CI's first phone call, but did answer the CI's second call. In this conversation, Evans instructed the CI to meet at the Exxon gas station at the intersection of Murtland and Ridge Avenues in the City of Washington. To complete the expected transaction, the CI was provided $100 in marked bills in denomination of $20 and $10.

According to Powell, the CI entered his car and drove to Exxon. Powell testified that he followed the CI in his vehicle to the Exxon station and stationed himself on Ridge Avenue approximately 50 yards away from the Exxon station. Manfredi testified that he too followed the CI from the time he entered his car until he arrived at the Exxon station. [Manfredi testified that he placed a video recording key fob on the dashboard of the CI's car and instructed the CI that it needed to be positioned in such a manner in order to record Evans' face. For some unknown reason, the fob moved and never recorded the face of Evans, nor any hand movements during the transaction.] Manfredi positioned himself on Murtland Avenue directly across the street from the Exxon station, also about 50 yards from the CI's car. Manfredi testified the CI was always within his sight.

Powell and Manfredi testified that they both observed Evans walking north on Murtland toward the Exxon station, entering the gas station parking lot, approaching the CI's car, and then entering the car from the front passenger door. Manfredi testified that no other person entered the CI's car from the time he installed the key fob recorder other than the CI. Both [officers] testified very soon after [Evans] entered the car, the CI then drove himself and [Evans] south on Ridge Avenue from Exxon, turning west (right) onto Coremont Avenue, turning north onto Kennedy Avenue, and stopping at the intersection of Kennedy and Murtland Avenues. [Evans] then exited the CI's car.

The CI proceeded to a designated neutral location. Powell and Manfredi followed the CI to the neutral location without the CI leaving his [sic] sight and the CI did not stop until he reached the designated neutral location. Upon reaching the location, Powell and Manfredi exited their respective cars' and went to the CI's car. At that time, the CI presented Powell with 9 stamp bags of heroin and the

bags were stamped "MVP" in green lettering. Manfredi recovered the recording key fob.

Trial Court Opinion, 3/13/19, at 2-4 (citations to the record and footnotes omitted).

The facts surrounding the second docket number occurred two days later; the trial court summarized those facts as follows:

> With respect to case number 787-2016, on January 8, 2016, Powell and several other officers, including [Evans'] state parole officer, drove to the [Evans'] apartment (375 Locust Avenue, Apartment 8, Washington, Pennsylvania) to arrest him for the distribution of heroin to the CI. [Evans] answered the knock on the door and the officers entered [Evans'] apartment to make the arrest, which took place in the apartment entryway. Powell testified that as the arrest was taking place and [Evans] was being handcuffed, he conducted a protective sweep of the small apartment that consisted of a living room, kitchen, bathroom and one bedroom.
>
> During the protective sweep, Powell noticed a gun holster inside a nightstand drawer while standing in the hallway leading to the bedroom. Powell testified that he was able to see into the bedroom because the bedroom door was open and that the nightstand drawers had clear panels, thereby allowing one to see inside. Knowing that the Defendant was a convicted felon and unable to legally possess a handgun, Powell determined that he should request a search warrant from the Court. Powell submitted an affidavit of probable cause in support of a search warrant request to the Court on January 8, 2016, which the Court granted. A search of the apartment was then conducted pursuant to the search warrant and contraband including controlled substances was located. [The contraband consisted of 350 stamp bags of heroin and 25 grams of crack cocaine located under the pillow on Evans' bed, a digital scale and 25 bags of heroin in the Evans' kitchen, a revolver holster and $1,400 in cash in the Evans' bedroom, 8 bricks of heroin and 1 ounce of crack not under the bed pillow.]

Trial Court Opinion, 3/13/19, at 4 (citations to record and footnote omitted).

Evans filed an omnibus pretrial motion seeking habeas corpus relief and the suppression of evidence. The trial court held an evidentiary hearing November 7, 2016, after which it denied the motion. Following a consolidated non-jury trial, the court convicted Evans of one count of possession of a controlled substance at each docket number. On January 7, 2019, the trial court imposed an aggregate sentence of thirty to sixty months of incarceration and a consecutive two-year probationary term. This timely appeal followed. The trial court did not require Pa.R.A.P. 1925 compliance, and instead cited to its March 13, 2019 opinion, as its Rule 1925(a) opinion.

Evans raises the following nine issues on appeal:

> I. Did the trial court err in not granting the oral motion to reconsider the Motion to Suppress when new evidence, adduced through trial testimony, revealed that mandatory discovery disclosure concerning the authority for a wiretap was not produced to [Evans'] counsel?
>
> II. Did the trial court err in denying [Evans'] pretrial Motion to Suppress in its Order of Court dated November 14, 2016 in concluding that a search warrant was not necessary to search Apartment 8 because Evans was a parolee and that alternatively, sufficient probable cause existed to issue a search warrant?
>
> III. Did the trial court err in denying the pretrial Motion to Suppress and undersigned counsel's Motion to Suppress at the conclusion of trial and thereby permitting introduction into evidence items illegally seized from Apartment 8?
>
> IV. Did the trial court err in denying the Motion to Suppress the fruits of the search warrant executed on Apartment 8, made at the conclusion of trial as Powell included references to evidence in the affidavit of probable cause that were fruits of illegal searches and seizures by law enforcement?

V. Did the trial court err in denying the Motion to Suppress the fruits of the search warrant executed on Apartment 8, made at the conclusion of trial, as Powell omitted from the affidavit of probable cause the fact that the video recording made within the CI's vehicle does not identify Evans or reveal a sale of heroin?

VI. Did the trial court err in [case No. 816-2016] in concluding there was sufficient evidence to convict Evans beyond a reasonable doubt on the charge of possession with intent to deliver a controlled substance?

VII. Did the trial court err in [case No. 816-2016] in rendering a guilty verdict on the charge of possession with intent to deliver a controlled substance that was against the weight of the evidence?

VIII. Did the trial court err in [case No. 787-2016] in concluding there was sufficient evidence to convict Evans beyond a reasonable doubt on the charge of possession with intent to deliver a controlled substance?

(IX. Did the trial court err in [case No. 787-2016] in rendering a guilty verdict on the charge of possession with intent to deliver that was against the weight of the evidence?

Evans' Brief at 7-9.

In his first five issues, Evans challenges the trial court's denial of his motion to suppress the evidence obtained from his alleged interaction with the confidential informant and the subsequent search of his apartment.[2] When we review the ruling of a suppression court:

---

[2] Evans consolidates his argument with regard to issues three through five. The pertinent procedural rules do not permit him to do so. See generally, Pa.R.A.P. 2119(a). Notwithstanding this procedural error, we will not find waiver and address Evans' second through fifth issues together.

we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

Commonwealth v. Hicks, 208 A.3d 916, 925 (Pa. 2019). "[A]ppellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pretrial motion to suppress." Commonwealth v. Bush, 166 A.3d 1278, 1281-82 (Pa. Super. 2017) (citation omitted).[3]

In his first issue, Evans claims that the trial court erred in not granting his oral motion at trial to reconsider his previously denied suppression motion based upon the revelation of new evidence. Specifically, based on Manfredi's testimony on cross-examination, Evans believes the district attorney's office generated a written approval of Manfredi's request to conduct an audio and visual recording of the drug transaction. See N.T., 10/15/18, at 173. According to Evans, Manfredi had no explanation why this document was not

_____

[3] We note that at the conclusion of the suppression hearing, the court did not enter "on the record a statement of findings of fact and conclusions of law" as required by Pa.R.Crim.P 581(I). In such a case, we "are constrained to focus our review" on the trial court's Pa.R.A.P. 1925(a) opinion. Commonwealth v. Reppert, 814 A.2d 1196, 1200 (Pa. Super. 2002 (en banc). Thus, we consider trial court's factual summaries reproduced infra when addressing Evans' suppression issues.

produced in discovery. Evans contends that, by not producing it, the Commonwealth failed to prove the recording of the telephone calls placed by the CI were consensual under the Wiretap Act, 18 Pa.C.S.A. §§ 5701-5782, and thus, the recordings were not admissible at trial.

As this Court has recently summarized:

> [T]he Wiretap Act is to be strictly construed to protect individual privacy rights because it derogates a fundamental Pennsylvania constitutional right—the right to privacy. Given that private conversations are [being] overheard by government authorities, courts should closely scrutinize law enforcement authorities for strict compliance with the Act's requirements. In establishing a violation of the Wiretap Act, a defendant is not required to establish actual prejudice.

Commonwealth v. Shreffler, 201 A.3d 757, 764 (Pa. Super. 2018)(citations and footnote omitted).

Section 5704 of the Wiretap provides exceptions when law enforcement has complied with certain procedural safeguards. Section 5704 reads, in pertinent part:

> § 5704. Exceptions to prohibition of interception and disclosure of communications
>
> It shall not be unlawful and no prior court approval shall be required under this chapter for:
>
> * * *
>
> (2) Any investigative or law enforcement officer or any person, acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

* * *

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be initiated, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however, such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom;

18 Pa.C.S.A. § 5704(2)(ii).

In addressing this issue, the trial court first acknowledged that a trial court may revisit a suppression issue at trial. See Trial Court Opinion at 5 (citing In re L.J., 79 A.3d 1079 (Pa. 2013), and Commonwealth v. DeMichel, 277 A.2d 159 (Pa. 1971)).[4] However, the trial court found Evans' renewed suppression claim lacked merit because section 5704(2)(ii) did not require that the district attorney's approval of the interception to be in writing. After citing Section 5704(2)(ii), the trial court stated:

Herein, Manfredi testified that he drafted a written request to make the recordings aforementioned. At trial, Manfredi produced said written request and provide it to Defense counsel during cross-examination. [Neither party asked that Manfredi's written request be moved into evidence.]

_____

[4] In light of these decisions, we reject the Commonwealth's claim that Evans waived this issue. See Commonwealth's Brief at 14; Pa.R.Crim.P. 581(J).

- 9 -

> Further, Manfredi testified that he met with the District Attorney's office to get the approval and was approved to conduct the recordings. The Court found Manfredi's testimony to be credible. Moreover, the aforementioned statute does not require that the District Attorney's approval be in writing. The only written requirement in 18 Pa.C.S.A. § 5704(2)(ii) is that an assistant district attorney may approve a law enforcement officer's request if [the assistant district attorney is] "designated in writing by the district attorney."

Trial Court Opinion, 3/13/19, at 6 (footnote omitted).

In arguing to the contrary, Evans does not challenge the trial court's conclusion that the district attorney's approval need not be in writing; instead he claims Manfredi testified, on cross-examination, that he believed the Commonwealth had generated written approval in this case and Evans was not provided with a copy of the writing. Relying on this Court's recent decision in Shreffler, supra, Evans claims that the mandatory rules of discovery require disclosure of the written authority during the discovery process. In that case, Shreffler contended that the trial court erred in failing to suppress the Commonwealth's wiretap recordings of his conversations with a confidential informant, which occurred inside his home, because the Commonwealth failed to comply with the disclosure provisions regarding mandatory discovery, Pa.R.Crim.P. 573(B)(1)(g), and the Wiretap Act. The trial court denied the suppression motion, and Shreffler appealed.

In support of his claim, Shreffler asserted that the order authorizing the in-home wiretap was subject to mandatory discovery under Pa.R.Crim.P. 573(B)(1)(g). Shreffler claimed he needed that document in order to properly

challenge the validity of the wiretap application. Without that document, Shreffler believed his cross-examination of the affiant at the suppression hearing "was unduly limited." Shreffler, 201 A.3d at 762.

In addressing Shreffler's claims, this Court initially set forth both the principles of statutory construction, and Section 5715 of the Crimes Code which provides, inter alia, that "sealed wiretap applications, final reports, and orders authorizing wiretaps may be disclosed only upon a showing of good cause[.]" We noted that the disclosure requirements of Section 5720 were inconsistent with the rules of criminal procedure because Rule 573(B)(1)(g) "mandates the disclosure of the 'authority', i.e., the application and order for the one-party consent wiretap as part of the Commonwealth's mandatory discovery requirements." Id. at 766. Therefore, we concluded that the Commonwealth violated the mandatory discovery rules by failing to disclose "the authority" for the wiretap of Shreffler's home.

To remedy this violation, we vacated Shreffler's judgment of sentence and remanded for a new suppression hearing. We stated:

> Given our Supreme Court's admonition that the Wiretap Act must be strictly construed to preserve the fundamental Pennsylvania constitutional right of privacy, [Shreffler] need not establish any prejudice from the Commonwealth's procedural violations. Accordingly, having discerned an error of law, we are reluctantly compelled to vacate [Shreffler's] judgment of sentence, vacate the order denying [Shreffler's] post-sentence motion, vacate the [] order denying [Shreffler's suppression] motion, and remand for a new suppression hearing. The Commonwealth must file a motion to unseal the affidavit of probable cause, order authorizing the wiretap, and documentation evidence

consent, and also provide them to [Shreffler's] counsel. [Shreffler's] counsel may file an amended motion to suppress based upon the unsealed documents and the trial court has the discretion to hold a new suppression hearing.

Shreffler, 201 A.3d at 767 (citation omitted).

In this case, Evans seeks the same relief because the Commonwealth did not provide him with the authority for the wiretap, despite repeated requests for discovery. He argues: "In the absence of such documentation, counsel cannot explore the voluntariness of the wiretap especially since the CI never testified." Evans' Brief at 28. He further claims:

While the Commonwealth might be right that the rules of evidence may not require such production, the rules of discovery do require such production and [the Superior] Court in Shreffler solidified that requirement under Pa.R.Crim.P. 573(B)(1)(g). Manfredi testified that documentation of the authorization was created, but the record reveals it was never produced.

Id. at 29 (citation omitted). Based on Shreffler, Evans maintains that his judgment of sentence at Case No. 816-2016 should be vacated and this matter remanded for a new suppression hearing.

The Commonwealth contends that the facts of this case are distinguishable from Shreffler. We agree. Unlike the in-home wiretap, and the required written court approval pursuant to Section 5704(2)(iv), the audio and video recordings in this case, pursuant to Section 5704(2)(ii) did not require "prior court approval." Moreover, although the trial court stated that it found Manfredi's testimony regarding the approval of the wiretap credible, the court did not expressly accept the detective's response, upon cross-

examination by trial counsel, that the Commonwealth gave written approval. See Commonwealth v. Krisko, 884 A.2d 296, 299 (Pa. Super. 2005) (citation omitted) (explaining "it is exclusively the province of the suppression court to determine the credibility of the witnesses and the weight to be accorded their testimony"). This is understandable, since the trial court concluded that written approval was not required under the Wiretap Act.

We further agree with the Commonwealth that, unlike the wiretap approved in Shreffler, here the Commonwealth fully complied with Section 5720 of the Wiretap by providing to Evans in discovery "'notice of the fact and nature of the interception.'" Commonwealth's Brief at 15. In his reply brief, Evans insists that a discovery violation was the basis for the remand in Shreffler rather than a failure to disclose under Section 5720. See Evans Reply Brief at 7-9. Although this may be true, the instant matter did not involve sealed documents like in Shreffler did. As noted infra, relevant provision of the Wiretap Act in this case does not require documentation of the "authority" for the consensualized recording. Thus, Evans' first issue fails.

In his second issue, Evans challenges the search of his apartment. Initially, we note that the officers in this case conducted two searches. First, a cursory protective sweep incident to Evans' arrest and, second, a more detailed search pursuant to a warrant. Evans contends that the protective sweep was not necessary because the officers could have secured the

premises and later obtained a search warrant.[5] He further argues that, although the officers claim they conducted a protective sweep, they exceeded the cursory nature the law permits in this type of search and, in doing so, they impermissibly observed items, which they then used as probable cause to obtain a search warrant.

Both the United States and the Pennsylvania Constitution guarantee that individuals shall not be subject to unreasonable searches or seizures. See U.S. Const. Amend. IV; Pa. Const. Art. I, § 8. A search or seizure conducted without a warrant is presumed to be unreasonable. Commonwealth v. McCree, 924 A.2d 621, 627 (Pa. 2007) (citations omitted). However, the United States Supreme Court has recognized exceptions to the warrant requirement, including a search conduct incident to a lawful arrest, also known as a "protective sweep." Maryland v. Buie, 494 U.S. 325 (1990).

In Buie, the Supreme Court held that, "the Fourth Amendment would permit [a protective sweep] if the searching officer 'possesse[d] a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences of those facts, reasonably warrante[d]" the officer in believing,' that the area swept harbored an individual posing a danger to the

_____

[5] Evans challenges the trial court's conclusion that, as a state parolee, he had a diminished expectation of privacy in Apartment 8. We agree that the suppression record does not support this conclusion. Nevertheless, we note this Court may affirm on any basis supported by the record. Se In re T.P., 78 A.3d 1166, 1170 (Pa. Super. 2013) (citing cases).

officer or others. Id. at 327 (quoting Michigan v. Long, 463 U.S. 1032, 1049-50 (1983) (citations omitted).

In Commonwealth v. Potts, 73 A.3d 1275 (Pa. Super. 2013), we noted that this Court has interpreted Buie as approving two levels of protection:

> Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

Potts, 73 A.3d at 1281-82 (citation omitted). As our Supreme Court made clear in Commonwealth v. Taylor, 771 A.2d 1261, 1268 (Pa. 2007), at the first level, "the scope of a protective sweep extends only to a visual inspection of those places in which a person might be hiding and lasts no longer than is necessary to dispel the fear of danger"); see also Commonwealth v. Crouse, 729 A.2d 588, 598 (Pa. Super. 1999) (protective sweeps "cannot be used as a pretext for an evidentiary search" and can only target "areas where a person could reasonably be expected to hide").

Evans argues that Detective Powell and the other officers went beyond the first level of a protective sweep and conducted an invalid second level search without reasonable fear for their safety. He argues that: "The actions of [Detective] Powell, [the WCDT] and the police officers assisting them went

beyond the first level of protective sweep recognized in Buie without having any articulable facts to justify further search for individuals based up a concern for officers [sic] safety." Evans' Brief at 41. According to Evans:

> When the arrest was completed, the entryway was clear, and there was no indication that anyone was inside the apartment. At the time of the arrest, there was no basis to conclude anything, except that the entry way was clear of danger. [Officer] Powell had no reason to believe that anyone may be inside of the apartment. Therefore, in walking down the 10-12 foot entryway and into the living room, [Officer] Powell and the other law enforcement officers extended the sweep further than where Evans was found in the doorway of his apartment without the necessary articulable facts justifying an extended sweep. Moreover, [Officer] Powell admits that the sweep began while Evans was arrested and patted down and continued for the one to two minutes it took to take Evans to the police car, meaning that the sweep was ongoing when the arrest had already been made and Evans had already departed from the premises. Such a sweep is to lengthy for an apartment that included an entryway, "small kitchen", bathroom, living room and one bedroom and was conducted by four [WCDT] detectives, one parole officer and at least two police officers.

Evans' Brief at 41-42 (citations to record omitted).

Here, at the suppression hearing, Detective Powell testified that, after arresting Evans inside his small apartment, the officers conducted a protective sweep because they "could possibly be attacked by unknown persons." N.T., 11/7/16, at 29. Although defense counsel questioned the reasonableness of this belief, the trial court credited Detective Powell's testimony. See infra. As noted above, when we review the denial of a suppression motion, we review the evidence presented by the prosecution and so much of the evidence for

the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Hicks, supra. Here, the facts accepted by the trial court, as restated infra, support the conclusion that the law enforcement officials did not exceed the first level of a protective sweep.[6]

Regarding the subsequent search of his apartment, Evans further challenges the trial court's conclusion that adequate probable cause supported the issuance of the warrant.[7] Detective Powell testified that while he and the other officers performed the protective sweep, he observed from the hallway a gun holster located in a transparent drawer in a stand next to the bed in the bedroom. Knowing that Evans was not permitted to possess a firearm, Detective Powell secured the apartment and sought a search warrant based upon his observation of the gun holster as well as other indicia of drug dealing. Because Detective Powell legally observed these items, Evans' claim that the officers had insufficient probable cause to support the search warrant fails.

---

[6] Given this conclusion, Evans' argument that the trial court relied on the "plain view" exception to the warrant requirement is inapt. See Evans' Brief at 38-40. Nevertheless, we read the trial court's statement that the holster was seen "in plain view" as no more than its finding that the officers saw it during the protective sweep and included this observation as part of its affidavit of probable cause when securing the search warrant.

[7] Although Evans states that "issues surrounding the issuance of the search warrant will be explored in Issues III, IV, and V," Evans Brief at 32, we choose to address the claim regarding probable cause as part of our disposition of this issue.

In his third and fourth issues, Evans reiterates his claims that items seized during the "illegal" searches of the apartment should have been suppressed. Because both searches were valid, as indicated above, these two issues warrant no relief.

In his fifth issue, Evans claims that Detective Powell intentionally omitted pertinent information from the affidavit of probable cause, which misled the court to issue the warrant. He claims that Detective Powell referred to a video recording to corroborate one of the drug transactions made by the confidential informant, but neglected to inform the court that the actual hand-to-hand transaction was not recorded. Evans also claims that "the CI's effectiveness in supplying information leading to the arrest or conviction of others or prior reliability is noticeably absent from the affidavit of probable cause as well." Evans' Brief at 50 (citing Commonwealth v. Gindelsperger, 706 A.2d 1216, 1226 (Pa. Super. 1997)).

The Commonwealth argues Evans waived any issue regarding the sufficiency of the affidavit of probable cause because he failed to raise it in his omnibus pretrial motion to suppress. We agree. The filing of a motion to suppress, generally, is insufficient to preserve any and all challenges to the validity of a search warrant. Instead, each specific challenge to a search warrant must be presented to the suppression court in order to preserve it for our review. See Commonwealth v. Glass, 718 A.2d 804, 807 (Pa. Super. 1998) (finding appellant failed to preserve his claim that the warrant's affidavit

of probable cause was defective because his motion to suppress was limited to arguing the constitutionality of anticipatory search warrants). In reviewing Evans' suppression motion, we conclude that Evans made no mention that Detective Powell intentionally omitted information from the affidavit of probable cause. Thus, because Evans raised these claims for the first time on appeal, they are waived. See generally, Pa.R.A.P. 302(a).

In his final four remaining claims, Evans challenges the sufficiency and/or weight supporting his conviction at each case number. Again, although Evans presents each claim as a separate issue, and these challenges are discrete inquires, at each case number he combines his argument on both claims. Despite this procedural violation, we will address each issue separately.

Regarding his sufficiency claims, this Court has reiterated the standards employed when reviewing these claims as follows: A challenge to the sufficiency of the evidence presents a pure question of law and, as such, our standard of review is de novo and our scope of review is plenary. Commonwealth v. Jacoby, 170 A.3d 1065, 1076 (Pa. 2017). When analyzing whether the evidence was sufficient to support a conviction, this Court must "view the evidence in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the jury could have found every element of the crime beyond a reasonable doubt." Commonwealth v. Thomas, 215 A.3d 36, 40 (Pa. 2019). "The

Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." Commonwealth v. Hopkins, 67 A.3d 817, 820 (Pa. Super. 2013). "The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." Commonwealth v. Brown, 52 A.3d 320, 323 (Pa. Super. 2012). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." Commonwealth v. Vargas, 108 A.3d 858, 867 (Pa. Super. 2014) (en banc). Additionally, this Court cannot "re-weigh the evidence and substitute our judgment for that of the fact-finder." Id.

Our standard of review regarding a challenge to the weight of the evidence is also well settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination [of whether] the verdict is against the weight of the evidence.

Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted).

Stated differently, "one of the least assailable reasons for granting or denying a new trial is the trial court's conviction that the verdict was or was not against

the weight of the evidence." Commonwealth v. Furness, 153 A.3d 397, 404 (Pa. Super. 2016) (citation omitted).

In his sixth issue, Evans claims that the evidence was insufficient to convict him of possession with intent to deliver at Case No. 816-2016—the sale to the confidential informant.[8]

Pennsylvania prohibits "the manufacture, deliver, or possession with intent to deliver, a controlled substance by a person not registered under this act. 35 P.S. § 780-113(a)(30). Delivery means "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 P.S. § 780-102. In Commonwealth v. Ellison, 213 A.3d 312 (Pa. Super. 2019), this Court recently reiterated the evidence necessary to convict a defendant of this charge:

> Thus, for a defendant to be liable for the delivery of a controlled substance there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so. A defendant actually transfers drugs whenever he physically conveys drugs to another person. However, Section 780-113(a)(30) does not require the Commonwealth to establish that an exchange of money took place, nor does it require that the defendant transfer

---

[8] Although Evans did not raise his sufficiency challenge in the trial court, Pa.R.Crim.P. 606(A)(7) "expressly provides that a challenge to the sufficiency of evidence can be raised for the first time on appeal." Commonwealth v. McCurdy, 943 A.2d 299, 301 (Pa. Super. 2008).

> the drugs to a law enforcement officer; all that is necessary
> is that the transfer be between two people.

Id. at 319 (Pa. Super. 2019 (citations omitted).

In support of his sufficiency challenge Evans alleges several shortcomings in the Commonwealth's evidence, including 1) the Commonwealth's failure to establish the telephone number the CI called was for an account held by him;[9] 2) the police admitted that they did not thoroughly search the CI's vehicle before arranging the drug transaction; 3) the CI moved the body recorder although the CI was told not to; 4) the video recording did not disclose the identity of the purchaser or the actual hand-to-hand exchange; and that the time and date stamp on the video did not match the information set forth in the criminal information. See Evans' Brief at 53-57.[10] Finally, Evans contends that because CI did not testify at trial, "the

_____

[9] Evans refers to these calls as being "illegally recorded." Evans Brief at 53. As discussed infra, we have determined otherwise. Notwithstanding this conclusion, even if we had agreed that the calls were illegally intercepted we do not review a sufficiency challenge on a diminished record. See Commonwealth v. Gray, 867 A.2d 560, 567 (Pa. Super. 2005) (explaining when reviewing a sufficiency challenge, "we do not review a diminished record. Rather, the law is clear that we are required to consider all the evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct").

[10] Evans also claims that Detective Powell "lied in the Affidavit of Probable Cause attached to the Criminal Complaint in this matter when he swore to the fact that the video in the CI's vehicle recorded the entire transaction between the CI and allegedly Evans, when in fact, it did neither." Evans Brief at 55.

video provides the only direct evidence of the occurrences within the CI's vehicle, but because of the placement by the CI, the video fails to provide any evidence of [Evans'] presence in the vehicle let alone any drug transaction occurring within the vehicle." Evans' Brief at 57.

When viewed in the light most favorable to the Commonwealth as verdict winner, our review of the record supports the conclusion that sufficient evidence was presented to convict Evans of possession with intent to deliver. Thomas, supra. Although the drug transaction was not recorded, both Powell and Manfredi personally witnessed Evans, with whom they were familiar, enter the CI's vehicle and never lost sight of the vehicle until they saw Evans later exit the vehicle. The trial court, as fact-finder, credited their testimony. Moreover, as noted above, the hand-to-hand transaction may be supported by wholly circumstantial evidence. Ellison, supra.

Instead of challenging sufficiency, Evans' argument actually goes to the weight and credibility of the evidence presented. See Commonwealth v. Palo, 24 A.3d 1050, 1055 (Pa. Super. 2011) (concluding that the appellant attacks the weight rather than the sufficiency of the evidence when his

---

Evans relies on Detective Powell's trial testimony to support this fact not the actual affidavit of probable cause. The affidavit of probable cause only generally states that: "Said purchase was captured on a pre-authorized video and audio recording."

- 23 -

argument is directed entirely to the credibility of the Commonwealth's chief witness).  As such, his sixth issue warrants no relief.

In his seventh issue, Evans challenges the weight of the evidence supporting his conviction at Case Number 816-2016.  The trial court found no merit to Evans' weight claim.  It concluded that the facts presented by the Commonwealth "have sufficient weight to sustain a Possession with Intent to Deliver a Controlled Substance conviction and that the conviction did not shock the Court's conscience."  Trial Court Opinion, 3/13/19, at 10.  "On appeal, [an appellate court] cannot substitute its judgment for that of the [fact-finder] on issues of credibility, of that of the trial judge respecting weight."  Commonwealth v. Sanchez, 36 A.3d 24, 39 (2011).  Here the trial court, as the fact-finder, rejected Evans' weight claim.  As we discern no abuse of discretion, Evans' seventh claim fails.

In his eighth issue, Evans contends that the evidence was insufficient to convict him of possession with intent to deliver at Case Number 787-2016—the subsequent search of his apartment.  In support, he claims "[there was] no evidence introduced at trial that [Evans'] name was on the lease for Apartment 8 and the presence of the power bill in [his] name does not confirm that he resided [there]."  Evans' Brief at 60.  Evans further contends that in

the bedroom the "bed could sleep two people." Id.[11] He then argues that since the evidence of drug dealing found in the apartment did not include other paraphernalia, the items found could indicate that the drugs were possessed for personal use by someone other than him. See Evans' Brief at 61-62.

Pennsylvania allows expert opinion testimony concerning "whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use." Commonwealth v. Roberts, 133 A.3d 759, 768 (Pa. Super. 2016) (citation omitted). Here, the Commonwealth's expert testified about why he believed that the drugs found were possessed with an intent to deliver, rather than for personal use. See N.T., 10/15/18, 51-60. The trial court credited this testimony. Additionally, circumstantial evidence indicated that Evans was the person who possessed the drugs. Once again, Evans' arguments challenge the weight of the evidence presented by the Commonwealth rather than its sufficiency. When viewing the evidence presented in the light most favorable to the Commonwealth, Evans' eighth issue fails.

_____

[11] Yet, in arguing against the extent of the protective sweep of the apartment, he asserted that the law enforcement officers had no reason to believe anyone else would be present. See infra.

In his ninth and final issue, Evans summarily raises a weight claim regarding the evidence the Commonwealth presented against him at Case Number 787-2016.  The trial court found no merit to his claim:

> [the] Court herein found [the expert's] testimony to be credible and the lack of wrapping paper, [tally] sheets, and a money counter was not significant to weigh against its conclusion that [Evans] possessed the intent to deliver a controlled substance.  This conclusion does not shock the conscience.

Trial Court Opinion, 3/1319, at 16-17.  Upon review of the record, we discern no abuse of discretion.  Clay, supra.   Thus, Evans' ninth issue fails.

In sum, because all of Evans' issues lack merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/6/2020